UNITED STATES DISTRICT COURT
THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN GUARANTEE and LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALTERNATIVE HOUSING GROUP, NARRAGANSETT HOUSING PARTNERS, L.P., NARRAGANSETT HOUSING ASSOCIATES, L.P., and PROPERTY ADVISORY GROUP, INC.<br>Defendants, | C.A. No. 06 297-T-LDA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY STAY THE COMPLAINT OF AMERICAN GUARANTEE FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT UNDER FED. R. CIV. P. 26(b)(1) and 26(b)(6)**

## PRELIMINARY STATEMENT

Defendants, two Rhode Island companies, have demanded that American Guarantee and Liability Insurance Company ("American Guarantee") indemnify them with respect to a $13 million jury verdict rendered in March 2006 in Delaware. Defendants have threatened American Guarantee with legal action if coverage is not confirmed by American Guarantee. In June 2006, American Guarantee disclaimed coverage for that claim. To allege, as Defendants' do, that no justiciable case or controversy exists, strains credulity.

Although styled as a motion to dismiss for lack of subject matter jurisdiction, the Defendants do not assert that this Court lacks subject matter jurisdiction over the complaint, or that American Guarantee has failed to state a claim. Rather Defendants simply assert that the

matter is not ripe for consideration by this Court under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202. ("Declaratory Judgment Act").

The declaratory judgment complaint filed by American Guarantee seeks to resolve an insurance coverage dispute surrounding its issuance of an excess insurance policy to Alternative Housing Group ("AHG") under which the Defendants claim insured or additional insured status. The Defendants seek indemnity for a jury verdict rendered in a matter captioned Galindez v. Narragansett Housing Associates, et al., C.A. No. 04C-05-73 FSS, on March 23, 2006, in the Superior Court of Delaware. The jury rendered a verdict in the amount of $3 million in compensatory damages against Narragansett Housing Associates, L.P. ("Narragansett") and Property Advisory Group, Inc. ("PAG"), jointly and severally, and $10 million in punitive damages against PAG alone. In light of the significant jury verdict, Defendants sought coverage from American Guarantee, pursuant to an excess policy that attaches after the exhaustion of a $1 million primary policy. Post-trial motions are pending in the underlying matter. Assuming, *arguendo,* that the compensatory and punitive damage awards are dismissed or substantially remitted, or even assuming that the trial court orders a new trial on all issues, under Rhode Island law American Guarantee may justifiably maintain a declaratory judgment action to determine the existence and extent of insurance coverage while an underlying action against its insured is pending or when a verdict, judgment or settlement has been reached.

Defendants argue that a decision in favor of Defendants on the post-trial motions may substantially change the landscape of the litigation pending in the Delaware court, thus eliminating many, if not all, of the defenses on which American Guarantee relies. We respectfully submit that the fact that post trial motions are pending does not affect American

Guarantee's insurance coverage defenses. Further, the fact remains that there is a $13 million verdict for which the Defendants seek coverage under the American Guarantee policy.

Rhode Island law clearly supports a finding that an actual controversy exists to maintain American Guarantee's declaratory judgment action and Defendants' request that this Court dismiss the declaratory judgment claim as unripe, or alternatively, stay the instant action until a decision by the Delaware court on the pending post-trial motions is made, should be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 24, 2006, Breed's Hill Insurance Agency Inc. (agent for AHG) advised American Guarantee of the claim at issue herein. (Exhibit A to Affidavit of Frederick E. Connelly, Jr., Esq. ("Connelly Affidavit")). Breed's Hill advised that on the preceding day, March 23, 2006, the trial of the Galindez v. Narragansett Housing Associates, et al. matter resulted in an award of $3 million in compensatory damages against Narragansett and PAG, jointly and severally, and an award of $10 million in punitive damages against PAG only. Breed's Hills' March 24th fax constituted American Guarantee's first notice of the Galindez lawsuit.

### I. THE UNDERLYING LITIGATION

The underlying Galindez matter arose out of injuries suffered on November 13, 2003, by Miguel Galindez ("Galindez"), an employee of CableNet Services, an installation contractor for Comcast who was injured at the Lexington Green Apartments when an exterior metal door slammed shut on his right hand, severing the top third of two of his fingers (the severed portion of one of the fingers was reattached). The plaintiff filed a lawsuit in the Superior Court of Delaware, Newcastle County, alleging that Narragansett, the building owner, was liable for his injuries as a result of a malfunctioning closure. On May 18, 2004, the Galindez Complaint was

served on Narragansett. In June 2004, Clarendon National Insurance Company ("Clarendon"), the primary carrier for Residential Resource Associates, Inc.-Alterative Housing Group, assigned North American Risk Services ("NARS"), a third-party claims administrator, to handle the matter. NARS, in turn, retained the law firm of Marshall, Dennehey, Warner, Coleman & Goggin to defend Narragansett in the lawsuit.

On October 10, 2005, the plaintiff amended his complaint to add PAG and Locks & Protection Devices, Inc. as defendants. The Galindez Amended Complaint asserted that the defendants negligently owned and/or operated and/or managed the Lexington Green Apartments so as to permit a dangerous condition to exist on the property. The Amended Complaint also added a punitive damages claim against all defendants.

During the course of discovery, plaintiff produced vocational and economic expert reports to support his claim of over $600,000 in past and future lost wages. Plaintiff also produced a medical expert report opining on the permanency of plaintiff's damages. Defendants produced no expert reports, and filed no motions to dismiss or to bifurcate the punitive damages aspect of the case.

Following the jury verdict, PAG filed a motion seeking the entry of judgment in its favor on the punitive damage claim on the ground that the evidence was legally insufficient to support that claim. Additionally, both Narragansett and PAG filed motions for a new trial or substantial remittitur. On May 10, 2006, the Delaware Superior Court heard initial oral argument on post-trial motions and at the conclusion of the oral argument provided the parties an opportunity to submit supplemental briefs. At the initial oral argument, defense counsel took the position that a remittitur of the compensatory damages to $1 million would be reasonable. (Exhibit B to

Connelly Affidavit p.21.13-22.1) The parties have had the opportunity to file their respective supplemental briefs which will be considered by the court in deciding the post-trial motions.

## II. THE CLAIM CORRESPONDENCE

Upon receipt of notice of the jury verdict, American Guarantee sent correspondence dated March 27, 2006, to Alternative Housing Group and Breed's Hill Insurance Agency acknowledging receipt of the claim under a full reservation of rights and requesting additional information. (Exhibit C to Connelly Affidavit) By correspondence dated April 26, 2006, American Guarantee acknowledged receipt of the claim for coverage for the jury verdict to PAG, again reserving its rights under the American Guarantee policy issued to Alternative Housing Group. (Exhibit D to Connelly Affidavit)

On numerous subsequent occasions, American Guarantee made requests to the putative insureds under the American Guarantee policy, as well as the Marshall Dennehey firm, for information necessary to reach a coverage determination.

By correspondence dated June 8, 2006, counsel for PAG wrote to American Guarantee demanding American Guarantee confirm coverage for the Galindez matter. (Exhibit E to Connelly Affidavit) PAG's counsel specifically stated:

> There is just absolutely no question that coverage exists under this policy for this occurrence. . .
>
> We expect Zurich to recognize its contractual obligations and step up to the plate and agree to cover this matter and save Property Advisory Group harmless with respect thereto. We expect a letter from Zurich within seven (7) days from the date of this letter so stating. . . .
>
> Thus your continuing refusal to step to the plate in this matter and refusal to acknowledge coverage and agree to defend and indemnify Property Advisory Group intends to hold Zurich fully responsible for the damages plus punitive damages and costs. . . .

> In this connection, Chapter 93A of the Massachusetts General Laws provides for remedies for an insured who is harmed by conduct such as yours. These remedies include treble damages. Since the damages already contemplated are substantial, treble damages would make them "out of sight".
>
> Property Advisory Group hereby demands that Zurich acknowledge coverage and that Zurich withdraw its limited reservation of rights and agree to honor its contractual obligations and to indemnify and save harmless Property Advisory Group.
>
> If we do not receive such a letter within seven (7) days from the date of this correspondence, we will take whatever, legal action we deem appropriate without further notice.

On June 9, 2006, Narragansett's counsel wrote a similar letter to American Guarantee, (Exhibit F to Connelly Affidavit), stating:

> Zurich has an obligation to affirm or deny coverage of this claim within thirty (30) days of notice under 18 Del. C. §2304(16)(e) and CDR 18-900-902, §1.2.1.6. Failure to do either affirm or deny coverage within thirty (30) days constitutes an unfair claim settlement practice subjecting Zurich to fines, regulatory discipline, and attorneys fees. Narragansett hereby demands that Zurich accept and affirm coverage of the Galindez occurrence within seven (7) days.

After review of the Complaint, post-verdict settlement correspondence and transcript of trial proceedings and post-trial motions in the underlying matter received from defense counsel, portions of the underlying litigation file, and relevant policies, by correspondence dated June 26, 2006, American Guarantee disclaimed any duty to indemnify either Narragansett Housing Associates, L.P. or Property Advisory Group, Inc. with respect to the jury verdict rendered in the underlying Galindez matter. (Exhibit G to Connelly Affidavit)

## III. THE FILING OF THE DECLARATORY JUDGMENT ACTION

On June 29, 2006, American Guarantee filed this declaratory judgment in the United States District Court for the District of Rhode Island seeking a declaration that it has no duty to indemnify Alternative Housing Group, Inc., Property Advisory Group, Inc., Narragansett

Housing Partners, L.P., or Narragansett Housing Associates, L.P. ("Defendants") with respect to the $13 million jury verdict rendered in the Galindez litigation.

The Defendants seek to dismiss the pending action on the basis that the court lacks subject matter jurisdiction over American Guarantee's complaint for declaratory judgment, that the allegations contained in American Guarantee's complaint are not ripe for review and that American Guarantee faces no direct or imminent harm for which the court may grant relief. Based on the factual record of the claims made by the Defendants concerning the Galindez litigation, not only is the Defendants' position unsupported in fact, but also unsupported by Rhode Island law.

The record is uncontroverted. The Galindez litigation was tried to conclusion, a substantial jury verdict was rendered, American Guarantee was notified of the suit and verdict after the verdict was rendered (Exhibit A to Connelly Affidavit), and Narragansett and PAG seek indemnity coverage from American Guarantee under Commercial Umbrella Policy Number AUS 3634609-01 (the "Excess Policy") (Exhibits E and F to Connelly Affidavit) The Excess Policy was issued to Residential Resource Associates, Inc. (A Risk Purchasing Group) for the period December 1, 2002 to December 1, 2004. A Certificate of Insurance No. 2415ZU certifying that the American Guarantee Policy provided coverage to the insured Alternative Housing Group as a member of the risk purchasing group, was issued for the period January 1, 2003 to January 1, 2004. The American Guarantee Policy contains a $50M per occurrence limit. An endorsement effective November 20, 2003, names Narragansett Housing Partners, L.P., Donald Goodrich, GP and Delaware Sate Housing Authority as additional insureds under the Excess Policy.

Shortly after receiving notice of the verdict, the Defendants began pressing American Guarantee for a coverage determination on the jury verdict. At the same time, American

Guarantee had been requesting information from the alleged insureds and their defense counsel necessary to make a coverage determination. Based on the information received, American Guarantee denied a duty to indemnify the defendants on June 26, 2006, based on late notice and reserved its rights under the Excess Policy on a number of other grounds. (Exhibit G to Connelly Affidavit) Based on the denial of coverage and various other coverage issues raised by the Galindez matter (punitive damages, additional insured issues, contractual liability, other insurance, failure to cooperate) American Guarantee filed this declaratory judgment action to determine the existence and extent of insurance coverage. (Exhibit H to Connelly Affidavit)

## LEGAL ARGUMENT

### DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, STAY THE COMPLAINT OF AMERICAN GUARANTEE FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) MUST BE DENIED

Defendants seek a dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(1) lack of subject matter jurisdiction over American Guarantee's complaint for Declaratory Judgment, as well as American Guarantee's failure to state a claim upon which relief can be granted pursuant to R. 12(b)(6). Defendants have failed to sustain their burden in support of a dismissal.

The plaintiff respectfully submits that the complaint in this matter satisfies the pleading requirements of Fed. R. Civ. P. 12(b)(6) and Defendants have failed to sustain their burden to the contrary. Although styled as such, Defendants' moving brief does not assert that this Court does not have subject matter jurisdiction, nor does it assert that plaintiff's pleadings fail to state of claim. Rather, Defendants assert that the Complaint fails to plead a justiciable case or controversy for consideration by this Court under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202. ("Declaratory Judgment Act").

In support of their argument, Defendants assert that "all issues raised in the declaratory judgment can be joined, if they still exist, in the Superior Court of Delaware." This assertion belies the true intent of Defendants' motion – to transfer the venue to Delaware state court. Defendants, however, have not filed a motion to transfer or to dismiss on forum non conveniens grounds, likely due to the fact that they could not meet the standards necessary to succeed for those motions.[1] Rather, in a thinly veiled effort to avoid this forum and the application of Rhode Island law to these Rhode Island companies, Defendants machinate their lack of justiciable case or controversy argument. For the reasons set forth below, the Defendants' motion to dismiss is devoid of any merit and should be denied.

### A. American Guarantee's Declaratory Judgment Action Is An "Actual Controversy" Supporting This Court's Exercise Of Discretion In Maintaining This Action

The Declaratory Judgment Act, 28 U.S.C. § 2201-2202, allows federal courts the discretion to grant declaratory relief in cases where there is an actual case or controversy. The Act does not itself confer subject matter jurisdiction, but rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis. Ernst & Young v. Depositors Economic Protection Corp., et al., 45 F.3d, 530, at 534 (1st Cir. 1995) citing Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 15-16 (1983). The Declaratory Judgment Act is designed to enable litigants to clarify legal rights and obligations before acting upon them. Ernst & Young, 45 F.3d at 534 citing Step Saver Data Systems, Inc. v. Wyse Tech., 912 F.2d 643, 649-50 (3d Cir. 1990) (citing legislative history). Because the Act offers a window of opportunity, not a guaranty of access, the courts, not the litigants, ultimately must determine when declaratory judgments are appropriate and when they

[1] The plaintiff's forum choice is generally preferred, unless there is a strong balance favoring the defendant's alternative forum choice. Leesona Corp. v. Duplan Corp., 317 F.Supp. 290, 299 (D.R.I. 1970)

are not. Such discretion endures "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Standard Fire Insurance Company v. Gordon, 376 F. Supp.2d 218 (D.R.I. 2005) (citations omitted).

In the instant matter, the Defendants do not dispute that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Defendants dispute that the declaratory judgment action constitutes an "actual controversy" for purposes of the Declaratory Judgment Act. Defendants assert that the test in sustaining the declaratory judgment action by American Guarantee is whether the action is "ripe" for review. The plaintiff respectfully submits that the "ripeness" test as set forth in the cases cited by Defendants is inapplicable to the maintenance of the declaratory judgment action in an insurance coverage context.

This Court has routinely addressed insurance coverage issues in declaratory judgment actions, including an insurer's duty to indemnify under Rhode Island law. See, e.g. Foxon Packaging Corp. v. Aetna Cas. & Sur. Co., 905 F. Supp. 1139 (D.R.I. 1995); Hartford Cas. Ins. Co. v. A&M Assoc. Ltd., 200 F. Supp.2d 84, 91 (D.R.I. 2002) and Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535 (D.R.I. 1995). Indeed, the Rhode Island Supreme Court, has recognized the value to an insurer of securing with expediency and fairness, "an advance determination as to its contractual duty to defend or indemnify one of its policyholders." Employers' Fire Insurance Company v. Beals, 103 R.I. 623, 628 (R.I. 1968). See also, Hartford Fire Ins. Co. v. R.I. Pub. Transit Auth., 233 F.3d 127, 132 (1st Cir. 2000). (First Circuit recognized insurers' need for immediate guidance regarding insurance coverage issues in declaratory judgment context).

The policy considerations supporting the declaratory judgment action in insurance coverage actions are set forth at length in Employers Fire Insurance Company v. Beals, supra at 628-629.

> The utility of a declaratory judgment action in liability insurance cases cannot be denied, for it is a remedy readily adaptable to controversies in which there is a hassle over the coverage offered by a policy as applied to a crystallized set of facts. 20 Appleman, Insurance Law and Practice, § 11332 at 109. Oftentimes it is the most expeditious and fairest method by which an insurer can secure an advance determination as to its contractual duty to defend or indemnify one of its policyholders. 6A Moore, Federal Practice (2d ed.), ¶57:19, p. 3111. Use of a declaratory action can be effectively summoned to resolve a wide variety of legal and factual issues which are peculiarly common to insurance cases; for example, it can be employed to dispose of issues relating to policy liability limits, waiver of rights, forfeiture of rights for alleged nonpayment of premiums and ownership, assignment or beneficiary rights, 3 Barron & Holtzoff, Federal Practice and Procedure, § 1264, pp. 282-86. Thus when uncertainty exists as to the precise obligations and rights flowing between an insurer and an insured by reason of a contract of insurance, a declaratory action could well provide the much needed source of enlightenment and clarification in order that both parties can proceed to litigate issues fully aware of the responsibilities and duties, if any, each may owe to the other.

Rhode Island courts have held it is most important for courts, in considering whether to award declaratory judgment, to examine the issues sought to be resolved. If the troublesome issue giving rise to insurer's dilemma is one which is separable from the issues awaiting to be litigated in the principal tort suit, a declaratory judgment should be liberally awarded. Advance determination of such issues is of great assistance to all the parties; and an early resolution of questions of this type, generally speaking, does not adversely affect the interest of the injured party. Beals, 103 R.I. at 630. See also, Fireman's Fund Ins. Co. v. E.W. Burman, Inc., 120 R.I. 845 (R.I. 1978); and Theroux v. Bay Associates, Inc., 114 R.I. 746, 749 (R.I.1975). Thus, declaratory judgment proceedings are ideally suited for preliminary disposition of such issues as whether or not lack of timely notice or failure to cooperate on the part of the insured absolves the insurer of its obligation to defend or indemnify. Beals, supra at 630.

The instant action begs for a declaratory judgment as soon as possible. The matter has been tried to verdict. Therefore, a declaratory judgment cannot possibly adversely affect the interest of any party. Even if the post-trial motions were granted in favor of the defendant and

the matter were to be retried, pursuant to Rhode Island law, preliminary disposition on issues of the status of the Defendants as insureds under the policy, late notice and coverage for punitive damages, issues which go to the core of the declaratory judgment action herein, are ideally suited for preliminary disposition.

Resolution of the insurance coverage issues may impact upon potential settlement of the underlying matter. Rhode Island case law supports the rendering of a prompt declaratory ruling in cases to assist the parties in evaluating their respective positions for settlement purposes. See Standard Fire Ins. Co. v. Gordon, 376 F. Supp.2d 218, 233-234 (D.R.I. 2005). Aetna, 889 F. Supp. supra, at 543; see also, Concise Oil and Gas P'ship v. La Intra-State Gas Corp., 986 F.2d 1463, 1471 (5th Cir. 1993); Aetna Cas. Ins. Co. v. Rock, 93-639 B., 1997 WL 580-594, at *3 (D.R.I. Feb. 23, 1997) (citing AC and S. Inc. v. Aetna Cas. & Sur. Co., 666 F.2d 819,823 (3d Cir. 1981)("It is entirely proper to seek a declaration of the parties' rights and responsibilities under the circumstances, if only to aid the parties in their attempts to settle or litigate the underlying suit against the insured.")

The cases cited by Defendants concern declaratory judgment actions in which governmental mandates are challenged. In those cases, both prongs of the ripeness test as set forth in Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967)(twofold aspect, requiring court to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration) are strictly applied. However, in the two cases cited by Defendants addressing declaratory judgments in the insurance coverage context, the test for maintaining a declaratory judgment action was that of establishing an "actual controversy" under the facts presented in the case.

The cases cited in Defendants' brief are clearly distinguishable from the present declaratory judgment action. Abbott Labs v. Gardner, supra, concerned an action by drug companies and their association against the Secretary of Health, Education and Welfare and the Commissioner of Food and Drugs concerning regulations requiring labels, advertisements and other printed matter relating to prescription drugs. The Supreme Court stated:

> The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to *administrative determinations* unless these arise in the context of a controversy 'ripe' for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. (Emphasis added).
> Id. at 148-149.

Public Service Com. of Utah v. Wycoff Co., Inc., 344 U.S. 237, 242-245 (1952) concerned an action for declaratory judgment and for injunction against the Utah Public Service Commission establishing that Wycoff's engagement in transportation of motion picture film and newsreels constituted inter-state commerce. The court in that instance stated that although courts should not be reluctant to grant declaratory relief in cases for which it was designed, it must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, *especially in the field of public law*. Id. at 243 (emphasis added).

The "ripeness test" was used in the case of Ernst & Young v. Depositors, supra, (accounting firm's complaint challenged the constitutionality of a Rhode Island statute that involved too many contingencies prior to any harm to the firm by the statute); Operation Clean Government v. The Rhode Island Ethics Commission, 315 F. Supp. 2d 187(D.R.I. 2004) (lawsuit brought by a citizens' group against The Rhode Island Ethics Commission and its members

alleging that the defendants violated the group's first and fourteenth amendment rights found subject to too many contingencies and no immediate harm); McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63 (1st Cir. 2001) (declaratory judgment action by disabled woman under the ADA to compel hospital to render after-birth recovery area wheelchair accessible in anticipation of future pregnancies found not to be a hardship rendering claim ripe); Mass. Ass'n. of Afro-American Police, Inc. v. Boston Police Department, 973 F.2d 18 (1st Cir. 1992) (case decidedly not ripe as plaintiff's alleged injury was contingent upon events that may not occur as anticipated or may not occur at all); State of Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685 (1st Cir. 1994) (ripeness standard used in determination of application of Indian Gaming Regulatory Act to settlement land under Rhode Island Indian Claims Settlement Act); Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59 (1983) (ripeness standard used in determination of constitutional challenges to the Price Anderson Act which imposed limited liability for nuclear accidents resulting from operation of federally licensed private nuclear power plants and its constitutional validity). All of the above cases cited by the Defendants concern the challenge to some state or federal mandate, clearly inapposite to the present declaratory judgment action.

Even the two insurance coverage cases that the Defendants cite in their brief actually support maintaining a declaratory judgment in this action. In Atlanta International Ins. Co. v. Atchison, Topeka & Santa Fe Railway Co., 938 F.2d 81 (7th Cir. 1991), the Seventh Circuit found no actual controversy entitling an insurer to bring a declaration judgment action. The facts in the Atlanta case, however, are clearly distinguishable from those in the current action. Atlanta's predecessor, Drake Insurance Company, issued a liability policy to Atchison, Topeka & Santa Fe Railway Co. ("Santa Fe") for a one-year period which provided a fourth layer of excess liability. A judgment against Santa Fe in excess of $715 million was entered. Santa Fe

sent letters entitled "Notification of Potential Loss" to its nearly 170 general liability insurers, including Atlanta. The form letter notified its insurers of the verdict and noted that there was a prospect of settlement discussions. The letter clearly set forth that no decision was reached on which policy year or years were implicated by the judgment as the conspiracy alleged in the underlying matter spanned a number of years. Further, based on a statute of limitations decision by the district court in Texas, the jury verdict in the underlying matter was predicated on conduct occurring *after* the single year covered by the Atlanta policy. The court determined that there was no definite indication that Atlanta was actually expected to pay anything as the result of the letter and no determination was made as to what policy years were affected. Id. at 84. Under the facts presented in that case, the court found that no actual controversy existed.

The facts in Atlanta are a far cry from those here in which a $13 million verdict has been rendered, American Guarantee is the only excess carrier from which indemnity is sought for the judgment, and clearly a demand (along with a threat of legal action) has been made by more than one putative insured. As stated by PAG's counsel:

> Property Advisory Group hereby demands that Zurich acknowledge coverage and that Zurich withdraw its limited reservation of rights and agree to honor its contractual obligations and to indemnify and save harmless Property Advisory Group.
>
> If we do not receive such a letter within seven (7) days from the date of this correspondence, we will take whatever, legal action we deem appropriate without further notice.

Unlike Atlanta, judgment has been rendered against the putative insureds and they have requested indemnification from the insurer.

The second insurance coverage case cited by the Defendants, Maryland Cas. Co. v. Pacific Coal & Oil Co., et al., 312 U.S. 270 (1941), further supports American Guarantee's

position that an actual case and controversy does exist. In that case, Maryland Casualty issued a liability policy to the insured, Pacific Coal & Oil Co., in which it agreed to defend and indemnify the insured for any sums the insured might be required to pay to third parties for injuries to person and property caused by automobiles hired by the insured. While the policy was in force, a collision occurred between an auto driven by third party Ortega and a truck driven by an employee of the insured. Ortega brought an action in Ohio state court against the insured to recover damages resulting from injuries sustained in the collision. Prior to the underlying action proceeding to judgment, Maryland brought a declaratory judgment action against the insured and Ortega asserting that the truck driven by the insured's employee was not one "hired by the insured." Hence, Maryland was not liable to defend or indemnify the insured and sought declaratory judgment to this effect as well a temporary injunction restraining the proceedings in the state court pending final judgment in the declaratory judgment action. Ortega sought to dismiss the complaint as it did not state a cause of action against him.

The Supreme Court opined that "the difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Maryland Casualty Company, supra, at 273 (citations omitted).

The Supreme Court concluded "[t]hat the complaint in the instant case presents such a controversy is plain." Id. Ortega was seeking a judgment against the insured in an action that the insured claimed was covered by the policy and certain sections of the Ohio Code which may give

Ortega certain further statutory rights. Therefore, the Supreme Court ruled that there was an actual controversy between the insurer and the insured and permitted the declaratory judgment action to proceed.

The Defendants argue that, in the alternative, this Court should stay the instant action until a decision by the Delaware court on the pending post-trial motions is made, to eliminate unnecessary litigation and the need to answer contingent and hypothetical questions of law. Defendants provide no support for such a remedy and, in fact, such a remedy is contrary to established case law in this District.

> [T]hat declaratory judgments should be stayed in favor of damages actions, is a doctrine that no longer commands support in the federal courts. Older cases express the view that damages actions are inherently preferable: "the discretion to grant or refuse the declaratory relief ··· should not be exercised for the purpose of trying issues in cases already pending," Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937). But this view has been definitively rejected by more recent cases. *See*, Sears, Roebuck & Co. v. Zurich Insurance Co., 422 F.2d 587, 590 (7th Cir. 1970) ("[T]he mere pendancy of another suit is not enough in itself to refuse a declaration." (citations omitted)); Scott & Fetzer Co. v. McCarty, 450 F.Supp. 274, 277 (N.D. Ohio 1977) ("Dismissal of a declaratory judgment is not justified by mere pendancy of similar litigation elsewhere." (citations omitted)); Wong v. Bacon, 445 F.Supp. 1177, 1187 (N.D. Cal. 1977) ("The existence of a pending state proceeding involving the same claim for restitution does not automatically make declaratory relief improper." (citations omitted)); Aetna Casualty & Surety Co. v. Hatridge, 282 F.Supp. 604, 606 (W.D. Ark. 1968), aff'd, 415 F.2d 809 (8th Cir. 1969) ("It is well settled that the mere pendancy of another action involving the same issues does not of itself preclude the exercise of declaratory jurisdiction."). This more recent view is reflected in Rule 57 of the Federal Rules of Civil Procedure, which states, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

SW Industries, Inc. v. Aetna Cas & Sur. Co., 653 F.Supp. 631, 636 (D.R.I. 1987). Even if the post-trial motions are granted, including a new trial, the coverage issues raised in the declaratory

judgment action continue to exist. They are not contingent or hypothetical and in fact are ideally suited for disposition in the District Court of Rhode Island.

**B. The Declaratory Judgment Action Should Not Be Joined In The Superior Court Of Delaware As The Ultimate Question Of Fact In The Declaratory Judgment Proceeding Has No Bearing On The Ultimate Question In The State Tort Suit**

Although unsupported by case law in the Defendants' moving papers, Defendants assert that pending the outcome of the post-trial motions, all the issues that have been raised in the declaratory judgment can be joined, if they still exist, in the Superior Court of Delaware. This issue is irrelevant to the within action and is an inappropriate assertion by the defendants. The appropriate process for defendants to raise such argument would be to file a motion to dismiss base on *forum non conveniens*, which would likely be unsuccessful. A motion to dismiss in light of a pending related state court action could not be entertained at this point as there is no pending state court action. However, as the issue was raised by Defendants', American Guarantee is compelled to address it.

"Under both the doctrine of ***forum non conveniens*** and the statutory provision for transfer of venue, the plaintiff's forum choice is generally preferred, unless there is a strong balance favoring the defendant's alternative forum choice." SW Industries, 653 F.Supp. at 637 (citing, Leesona Corp. v. Duplan Corp., 317 F.Supp. 290, 299(D.R.I. 1970), discussing, Gulf Oil Corp. v. Gilbert, 330 U.S. 501. 508 (1947)). There is no other declaratory judgment action pending related to these issues. Accordingly, there is no reason to consider another alternative forum.

The District Court of Rhode Island has placed great weight on "the convenience of the parties and witnesses" and "the interest of justice" in determining whether a matter should be transferred pursuant to a motion. Leesona Corp. v. Duplan Corp., 317 F. Supp. at 299. The

Defendants set forth in their moving brief at p. 3 that Lexington Green Apartments are owned by Narragansett Housing Associates, L.P., a Rhode Island limited partnership, and managed by Property Advisory Group, Inc., a Rhode Island corporation, under a management agreement. Both entities have their principal place of business in Rhode Island and Rhode Island is the State where the policy was delivered and from which premiums were paid. Factors in favor of maintaining the declaratory judgment in Rhode Island that would be considered in a forum choice motion. See Gulf Oil, 330 U.S. at 508. There is simply nothing inconvenient about this dispute being resolved in a Rhode Island forum.[2]

## CONCLUSION

For all the foregoing reasons, plaintiff respectfully submits that defendants' motion to dismiss, or alternatively, stay the complaint of American Guarantee for declaratory judgment should be denied.

AMERICAN GUARANTEE and LIABILITY INSURANCE COMPANY
By its attorneys,

/s/ Frederick E. Connelly, Jr., Esq.
Frederick E. Connelly, Jr., Esq., #6772
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100
(617) 951-2125 (fax)
fconnelly@peabodyarnold.com

Dated: September 15, 2006

[2] We note that Defendants summarily contend that Delaware law would apply to the declaratory judgment action, without citation in support of that argument. American Guarantee disagrees with that contention. It is American Guarantee's position that Rhode Island law applies to the policy, given that state's status as the place of contracting.

## CERTIFICATE OF SERVICE

I, Frederick E. Connelly, Jr., hereby certify that I have this 15th day of September, 2006, electronically filed the above document. The document is available for viewing and downloading from the ECF system. I have electronically served a copy of the foregoing upon the defendants through their counsel John T. Walsh, Jr., Esq., Higgins, Cavanagh & Cooney, LLP, 123 Dyer Street, Providence, RI 02903 at jwalsh@hcc-law.com.

/s/ Frederick E. Connelly, Jr._________
Frederick E. Connelly, Jr.