## LEGAL ARGUMENT

## I.

## AMERICAN GUARANTEE HAS NO OBLIGATION TO FUND OR FURNISH THE PREMIUM FOR THE PUNITIVE DAMAGES PORTION OF THE SUPERSEDEAS BOND

Punitive damages are not insurable in the State of Rhode Island.[1] The Supreme Court of Rhode Island has held that the shifting of a punitive damages award from a tortfeasor to an insurer is contrary to public policy. Allen v. Simmons, 533 A.2d 541, 544 (R.I. 1987). In analyzing the issue of whether punitive damages are insurable under Rhode Island law, the Supreme Court of Rhode Island has held that "the sounder approach bars the wrongdoer from shifting the punitive damages to the insurer." Id. at 544.

More recently, in Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc., 860 A.2d 1210, 1218-19 (R.I. 2004), the Supreme Court of Rhode Island summarized the issue it addressed in Allen as "whether liability for punitive damages may be shifted to the insurer." While Cumberland did not directly involve the issue of punitive damages, the Court noted that "[c]ertainly, were we faced with an award of punitive damages against the town officials responsible for the fraudulent acts underlying this suit, we would not permit those damages to be shifted to the insurers." Cumberland, 860 A.2d at 1219.

---

1 The insureds are, upon information and belief, located in Rhode Island and Rhode Island is the state where the policy was delivered and from which premiums were paid. Rhode Island utilizes the place of contracting to resolve conflict of laws issues. See Coderre v. Travelers' Insurance Company, 48 R.I. 152, 155 (1927) ("in the absence of a special provision in the contract to the contrary, a contract is to be construed in accordance with the law of the state where it is made."); Soar v. National Football League Players' Association, 550 F. 2d 1287, 1289-90 n.5 (1st Cir.1977); Anderson v. St. Paul Fire and Marine Ins. Co., 570 F. Supp. 1222, 1223 n.1 (D.R.I. 1983); Bartholomew v. Insurance Co. of N. Am., 502 F. Supp. 246, 250 (D.R.I. 1980) aff'd., 655 F.2d 27 (1st Cir. 1981).

Rhode Island law is clear that the punitive damages award against PAG is not a liability that can be shifted to American Guarantee under the policy at issue, assuming that American Guarantee even has any coverage obligation to PAG. Because American Guarantee would have no obligation under Rhode Island law to pay for the punitive portion of the award, it follows that it would not be required to pay the premium for the supersedeas bond related to the punitive damages portion of the judgment. Other courts have held that insurers need only pay the cost of a bond for the portion of a judgment that the insurers would be contractually obligated to pay. See, e.g., Courvoisier v. Harley Davidson of Trenton, Inc., 162 N.J. 153, 162-63 (1999) (an insurer only obligated to bond the amount of a judgment it would be obligated to pay); Wilcox v. Bd. of Educ. of Warren County, 779 S.W.2d 221, 223 (Ct. App. Ky. 1989) (insurer "need not commit to satisfying more than the amount it is obligated to pay").

Accordingly, American Guarantee has no obligation to fund the premium for or furnish the supersedeas bond attributable to the $10 million punitive damages award.

## II.

## AMERICAN GUARANTEE HAS NO OBLIGATION TO FUND OR FURNISH THE SUPERSEDEAS BOND BECAUSE IT HAS RIGHTFULLY DISCLAIMED COVERAGE FOR THE UNDERLYING LITIGATION

In its disclaimer letter dated June 26, 2006, American Guarantee disclaimed coverage for the claim that was the subject of the Underlying Litigation on the grounds of late notice and otherwise reserved its rights under the terms of the American Guarantee Excess Policy. See SUMF, ¶ 3. Thereafter, American Guarantee followed its disclaimer with the filing of the instant declaratory judgment action on June 27, 2006. Id., ¶ 4.

An insurer that disclaims coverage in good faith should not be required to fund or furnish a supersedeas appeal bond. See, e.g., United Fire & Casualty Co. v. Shelly Funeral Home, Inc., 642 N.W.2d 648 (Iowa 2002). In United Fire, the Court reasoned that:

> Given the insurer's good-faith doubts about coverage, and the underlying purpose of the bond to secure the judgment, we agree it was reasonable for [the insurer] not to place itself in a position of assuming liability on the bond no matter the outcome of the appeal.

Id. at 658.[2]

As demonstrated above, the Defendants here had numerous opportunities to notify American Guarantee of the Underlying Litigation but, for reasons that only Defendants know, they chose not to do so. Defendants certainly had an obligation to put American Guarantee on notice after NHA rejected the $100,000 arbitration award and chose to risk an even greater award at trial. Thereafter, there were numerous other times when Defendants should have realized that they faced the possibility of a significant excess verdict but did not provide American Guarantee with notice of the Underlying Litigation. For example, the underlying Plaintiff produced vocational and expert reports opining that his past and future lost wages alone totaled in excess of $600,000. See SUMF, ¶¶ 15-16. Defendants did not retain their own experts, nor did they put American Guarantee on notice of a claim that had a strong likelihood of exceeding the $1 million limits of the Clarendon Primary Policy (particularly if the underlying Plaintiff's experts' opinions went unrebutted at trial). Id., ¶ 17. In another instance, PAG's own representative took

---

2 The policy at issue in United Fire & Casualty Co., 642 N.W.2d at 648, like the American Guarantee Excess Policy, provided that the insurer had no obligation to "furnish" bonds on behalf of its insured, a fact upon which the court heavily relied.

the witness stand at trial and gave testimony that did significant damage to Defendants' case when, among other things, she spoke in a derogatory fashion about the residents of the Lexington Green Apartments, broadly condemning them all to be little more than vandals, criminals and drug dealers. Id., ¶ 22. Despite the damaging testimony of PAG's representative, the Defendants again chose not to put American Guarantee on notice of the Underlying Litigation, at a time when it was still possible to settle the matter for potentially far less than the $13 million the jury ultimately awarded. Only after the jury rendered its excess verdict did Defendants see fit to put American Guarantee on notice at a time when American Guarantee could have no impact on the course of the Underlying Litigation and the damage had already been done. On this basis, American Guarantee had legitimate and good faith grounds on which to disclaim coverage for the Underlying Litigation and should not be required to fund or furnish the supersedeas bond.

Accordingly, American Guarantee has no obligation to fund or furnish any portion of the supersedeas bond in the Underlying Litigation based on American Guarantee's good faith disclaimer of coverage.

## III.

## AMERICAN GUARANTEE HAS NO OBLIGATION TO FURNISH THE SUPERSEDEAS BOND AND, IF ANYTHING, WOULD BE REQUIRED TO FUND THE PREMIUM FOR ITS POTENTIAL SHARE OF COMPENSATORY DAMAGES ONLY

Under well-settled Rhode Island law on the construction of insurance policies, the intent of the parties to the insurance agreement is ascertained by looking at the entire policy. Providence Journal Company v. The Travelers Indemnity Company, 938 F.Supp. 1066, 1073 (D.R.I. 1996)(citing Johnson v. Western Nat. Life Ins. Co., 641 A.2d 47, 48 (R.I. 1994)). Moreover, the language used in the policy must be given its plain, ordinary,

and usual meaning, and when the terms are found to be clear and unambiguous, the task of judicial construction is at an end. Providence Journal Company, 938 F.Supp. at 1073 (citing Malo v. Aetna Casualty and Sur. Co., 459 A.2d 954, 956 (R.I. 1983)). The contract terms must then be applied as written. Id.

Here, the American Guarantee Excess Policy clearly and unambiguously addresses the fact that American Guarantee has no obligation to furnish supersedeas bonds. Section III of the American Guarantee Excess Policy is entitled "Defense and Supplementary Payments." At paragraph A, the policy provides that,

> We have the right and duty to assume control of the investigation, settlement or defense of any claim or suit against the insured for damages covered by this policy:
>
> 1. . . . when the applicable limit of underlying insurance has been exhausted by payment of claims.
>
> [SUMF, ¶ 29.]

In the next paragraph of the American Guarantee Excess Policy, it states the following:

> In those circumstances where paragraph A. above applies, in addition to the applicable Limits of Insurance, we will pay our expenses and the following to the extent that they are not included in underlying insurance: . . . The cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. **We do not have to furnish these bonds.**
>
> [Id. (emphasis added.)]

The above language is clear that American Guarantee has no obligation to furnish a supersedeas bond, even if coverage were available and it had assumed a duty to defend. The policy language is consistent with only one interpretation - that the insurer may be required to pay the premium for, but not furnish, any necessary appeal bond. See, e.g.,

Ohio Cas. Ins. Co. v. Gantt, 54 So.2d 595, 598 (Ala. 1951)(noting distinction between obligation to pay premium on appeal bonds and obligation to "apply for or furnish such bonds"). Similarly, the Court in S.L. Moore, Sr. v. Columbia Cas. Co., 174 F. Supp. 566, 573 (S.D. Ill. 1959), held that an insurer did not have to furnish or post a bond when its policy language explicitly stated that it was "without any obligation to apply for or furnish any such bonds." As the Court stated:

> Moore [the insured] had the right to himself perfect an appeal if he saw fit to do so, in which event it would be up to him to provide the appeal bond, the only obligation of the Insurance Company being to pay the premium therefore. See also, Appleman On Insurance Law & Practice, §136.11[B](Second Ed.).

At most, American Guarantee's obligation with respect to any supersedeas bond necessary to stay execution of the appeal in the Underlying Litigation is to fund the premium for bond amounts within the policy limits. See SUMF, ¶ 29. American Guarantee has no obligation to furnish or become the principal obligor for such bond. Here, if American Guarantee has any obligation whatsoever with respect to the supersedeas bond that obligation would be limited to funding the premium needed to bond damages that are potentially covered under the American Guarantee Excess Policy (*i.e.*, the premium for bonding $2 million of the $3 million compensatory damages award).

Finally, it must be emphasized that American Guarantee is not the only potential source of funding for the Defendants. Clarendon "managed" this claim from the beginning and could have paid the $100,000 arbitration award. For reasons that defy logic, that award was rejected and Defendants and Clarendon failed to hire any experts, failed to realize that even the court seemed offended by the trial testimony of PAG's

representative and failed to put American Guarantee on notice until after the jury had rendered its $13 million verdict. Under these circumstances, American Guarantee should not be obligated to fund the premium necessary to bond the $13 million judgment in the Underlying Litigation

Accordingly, American Guarantee has no obligation to furnish the supersedeas bond in the Underlying Litigation and, if anything, would only be obligated to fund the premium required to bond $2 million of the $3 million compensatory damages award.

## CONCLUSION

Accordingly, American Guarantee respectfully requests that the Court enter an Order declaring that it has no obligation to fund or furnish any and all supersedeas bonds needed to secure the judgment in the Underlying Litigation. In the alternative, American Guarantee requests that the Court enter an Order declaring that if American Guarantee has any obligation to Defendants with respect to the supersedeas bond, that obligation is limited to funding the premium required to bond $2 million of the $3 million compensatory damages award only; American Guarantee has no obligation to furnish the bond.

Respectfully submitted,

COUGHLIN DUFFY LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: *_/s/ Adam M. Smith_*
Adam M. Smith

PEABODY & ARNOLD, LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: *_/s/ Frederick E. Connelly, Jr._*
Frederick E. Connelly, Jr.

Dated: March 30, 2007