IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| Miguel Galindez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04C-05-073-JRJ |
| | ) | |
| Narragansett Housing Associates, L.P., t/a Lexington Green Apartments, Property Advisory Group, Inc. and Locks & Protection Devices, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted: April 5, 2006
Date Decided: November 28, 2006

***OPINION***

*Upon Defendant Narragansett Housing Associates and Property Advisory Group, Inc.'s Motion for a New Trial or Remittitur* - **DENIED**

*Upon Defendant Property Advisory Group, Inc.'s Motion for Judgment as a Matter of Law* - **DENIED**

*Appearances*:

Richard A. Zappa, Esquire, Young Conaway, Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware, 19899-0391, for plaintiff.

Dawn Courtney Doherty, Esquire, and Megan T. Mantzavinos, Esquire, Marks, O'Neill, O'Brien & Courtney, 913 North Market Street, Suite 800, Wilmington, Delaware, 19801, for defendants Narragansett Housing Associates, L.P., and Property Advisory Group, Inc.

Sean A. Dolan, Marshall, Dennehey, Warner, Coleman & Goggin, 1220 North Market Street, 5th Floor, P.O. Box 8888, Wilmington, Delaware, 19899-8888, formerly counsel for defendants Narraganset Housing Associates, L.P. and Property Advisory Group, Inc.

Charles P. Coates, III, Esquire, Law Offices of Charles P. Coates, III, 131 Continental Drive, Suite 407, Newark, DE 19713, for defendant Locks and Protection Devices, Inc.

JURDEN, J.

This is the Court's decision on Defendants Narragansett Housing Associates, L.P., and Property Advisory Group, Inc.'s Motion for New Trial or Remittitur and Defendant Property Advisory Group, Inc.'s Motion for Judgment as a Matter of Law following a $13 million jury verdict on March 23, 2006.[1]

## I. FACTS

The plaintiff, Miguel Galindez, was injured on November 13, 2003 at the Lexington Green Apartment Complex, which is owned by defendant Narragansett Housing Associates, L.P. ("Narragansett"), and managed by Property Advisory Group, Inc. ("PAG").[2] (Hereinafter collectively referred to as "defendants.") Plaintiff was injured when a door with a broken closer in an interior hallway of the Brandywine Building, one of the apartment buildings in the Lexington Green Apartment Complex, slammed shut and crushed part of his right hand.[3] The plaintiff, a cable installer, sustained permanent damage to the hand, including the amputation of the upper phalange of one finger, and the vascular destruction of the upper phalange of another finger.[4]

## II. PROCEDURAL HISTORY

A four day jury trial resulted in a verdict in favor of the plaintiff for $3,000,000 in compensatory damages against the defendants Narragansett and

[1] The jury awarded $3 million in compensatory damages against defendants Narragansett Housing Associates, L.P. t/a Lexington Green Apartments and Property Advisory Group, Inc. and $10 million in punitive damages against Property Advisory Group, Inc. only.
[2] Am. Cmpl., D.I. 37.
[3] *Id.*, ¶¶ 9-13.
[4] *Id.*, ¶ 18.

PAG, and $10,000,000 in punitive damages against defendant PAG. The jury found Locks and Protections Devices, Inc. not liable.

At the conclusion of the evidence, PAG moved for judgment as a matter of law on Mr. Galindez' reckless conduct/punitive damages claim against PAG. The Court denied the motion and submitted the claim to the jury. Following the verdict, defendant PAG renewed its motion for judgment as a matter of law pursuant to Superior Court Civil Rule 50(b) and defendants Narragansett and PAG filed a motion for a new trial or remittitur of the damages awarded by the jury.

## III. STANDARD

### A. Motion for New Trial/Remittitur

The standard of review on a motion for new trial is well-settled. The jury's verdict is presumed to be correct. Barring exceptional circumstances, the Court should not set aside a jury's verdict unless it contradicts the great weight of the evidence, or the Court is convinced the jury disregarded the applicable rules of law. The Court will order a new trial only if it determines the jury's verdict was tainted by legal error committed by the Court before or during trial.[5] When considering a motion for new trial under Superior Court Civil Rule 59, the Court is mindful that "[t]raditionally, the court's power to grant a new trial has been

[5] *See Kelly v. McHaddon*, 2002 WL 388120, at *4 (Del. Super.).

exercised cautiously and with extreme deference to the findings of the jury."[6] If the case involves a controverted issue of fact on which the evidence is conflicting, and "out of the conflict may be gathered sufficient evidence to support a verdict for either party, the issue of fact will be left...to the jury."[7] Thus, the Court will not disturb a jury's verdict unless "the evidence preponderates so heavily against the jury verdict that a reasonable jury could not have reached the result."[8] In considering a new trial motion, the Court cannot ignore the legitimate role of the jury.[9] With respect to remittitur, the Court will not reduce a jury award unless it is "so grossly excessive as to shock the Court's conscience and sense of justice; and the injustice of allowing the verdict to stand is clear."[10]

## B. <u>Motion for Judgment as a Matter of Law</u>

Judgment as a matter of law is granted when there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on a claim or issue.[11] When reviewing such a motion during or after trial, the trial judge is required to view all facts in the light most favorable to the non-moving party and deny the

---

[6] *Maier v. Santucci*, 697 A.2d 747, 749 (Del. 1997) (*citing Lacey v. Beck*, 161 A.2d 579 (Del. Super. 1960)).
[7] *Storey v. Camper*, 401 A.2d 458, 462 (Del. 1979) (*quoting Philadelphia, B. & W. R. Co. v. Gatta*, 85 A. 721, 729-30 (Del. 1913)).
[8] *Id.* at 465 (*citing Philadelphia, B. & W. R. Co.*, 85 A. 721). *See also Lopez v. McWhorter*, 1995 WL 264610, at *1 (Del. Super.) (*quoting Ellis v. Shipe*, 1995 WL 158691, at *1 (Del. Super.)) ("While the trial judge in Delaware is permitted to undertake a review of all the evidence, he must be cautious of exercising 'an over-active judicial reach.'").
[9] *Stabler v. Smith*, 1996 WL 944863, at *1 (Del. Super.).
[10] *Riegel v. Aastad*, 272 A.2d 715, 717-18 (Del. 1970)(*citing Bennett v. Barber*, 79 A.2d 363 (Del. 1951); *Lacey*, 161 A.2d 579).
[11] Super. Ct. Civ. R. 50(a).

motion if, under any reasonable view of the evidence, the jury could find in favor of the non-moving party.[12]

Under Delaware law, "reckless" and "wanton" are essentially synonymous terms. The Delaware Superior Court Pattern Civil Jury Instructions for reckless conduct and wanton conduct are, for all intents and purposes, identical.[13] Recklessness does not require a showing of an intent to cause harm or malice, but does require a showing of conduct that is "so unreasonable and so dangerous that the person either knows or should know that harm will probably result."[14] If the facts of the case establish a reasonable inference that the defendant's conduct was reckless, the trial Court is required to submit that issue to the jury for resolution, and a post-trial motion for judgment as a matter of law under Rule 50(b) must fail if such is the case.[15]

## IV. DISCUSSION

### A. Motion for New Trial or Remittitur

Under Delaware law, a jury's verdict is presumed to be correct and just.[16] A jury award that is challenged as excessive will not be disturbed unless it is clearly

---

[12] *Ebersole v. Lowengrub*, 208 A.2d 495, 497-98 (Del. 1965).
[13] *See* Del. P.J.I. Civ. §§ 5.9 and 5.10 (2000).
[14] Del. P.J.I. Civ. § 5.9 (2000) (*citing* 11 *Del. C.* § 231(c); *Hamilton v. State*, 816 A.2d 770, 773-74 (Del. 2003); *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 265-66 (Del. 1995); *Jardel Co. v. Hughes*, 523 A.2d 518, 529-30 (Del. 1987)).
[15] *See e.g., Moore v. SOM, Inc.*, 2005 Del. Super. LEXIS 100, at *1-2; *Jones v. Delaware Cmty. Corp. for Individual Dignity*, 2004 Del. Super. LEXIS 133, at *11-12; *Christiana Marine Service Corp. v. Texaco, Inc.*, 2004 Del. Super. LEXIS 3, at *8.
[16] *Storey v. Castner*, 314 A.2d 187, 193 (Del. 1973) (*citing Lacey*, 161 A.2d 579).

the "result of passion, prejudice, partiality, or corruption; or that it was manifestly the result of disregard of the evidence or applicable rules of law."[17] Moreover, a jury award will not be set aside "unless it is so grossly excessive as to shock the Court's conscience and sense of justice; and unless the injustice of allowing the verdict to stand is clear."[18] When any "margin for reasonable difference of opinion exists in the matter of a verdict," the courts will yield to the jury's decision.[19] A jury verdict that is supported by the evidence must be upheld.[20]

Notwithstanding the deluge of new trial motions the Court has considered in the last several years,[21] the Court seldom interferes with a jury verdict.[22] As this

[17] *Medical Center of Delaware, Inc. v. Lougheed*, 661 A.2d 1055, 1061 (Del. 1995) (*quoting Riegel*, 272 A.2d at 717-18).
[18] *Castner*, 314 A.2d at 193 (*citing Riegel*, 272 A.2d at 718; *Bennett*, 79 A.2d 363).
[19] *Id.* (*citing Burns v. Delaware Coca-Cola Bottling Company*, 224 A.2d 255, 258 (Del.Super. 1966)).
[20] *Lougheed*, 661 A.2d at 1061 (*citing Gannett Co. v. Re*, 496 A.2d 553 (Del. 1985)).
[21] *See e.g. Beatty v. Smedly*, 2003 WL 23353491, at *3 (Del. Super.) ("[M]otions for new trials have become the norm after parties to personal injury litigation are on the receiving end of jury verdicts which do not meet their expectations."); *Dunkle v. Prettyman*, 2002 WL 833375, at *3 n.10 (Del. Super.) ("Remarkably, this judge has seen a motion for new trial following every jury verdict he has taken over the last 17 months which resolved claims for personal injuries involving disputed damages."); *Hartnett v. Romspert*, 1995 WL 945818, at *1 (Del. Super.) ("This Court is bombarded by post-trial motions by disappointed plaintiffs...what is frustrating is the continuing anticipation that somehow the Court can automatically make real the plaintiffs expectation after a jury has decided to the contrary."); *Esry v. St. Francis Hospital, Inc.*, 2002 WL 558878, at * 1 (Del. Super.) ("One must wonder why an institution so soundly *and regularly* criticized on motions for new trial is so widely demanded upon initiation of a lawsuit.") (emphasis added).
[22] *Stabler*, 1996 WL 944863, at *1. *See also Savage v. Cooke*, 1995 WL 945563 (Del. Super.). In *Dunkle*, 2002 WL 833375, at *2-3 (citations omitted), the Court noted:

> [W]hen considering a motion for new trial, this Court is ever-mindful of the substantial effort that is expended to accommodate a litigant's demand for a trial by jury. First and foremost, fourteen citizens of this state are asked to interrupt their lives to consider evidence and resolve a dispute that has nothing to do with them. Then, court personnel are assigned to orient, accommodate, feed, escort and protect the jury. And finally, the Court and counsel exert substantial energy to create a set of suitable voir dire questions at the outset of the trial, and suitable jury instructions at the close of the trial. While certainly not dispositive of the issue, the strict standard of review by which a motion for new trial is measured no doubt recognizes that it is the parties themselves who elect to present their claims to a jury of their peers and, by so doing, it is the parties who activate the machinery which is our jury trial system. When the parties activate the jury trial system, they activate the risk inherent in the system. And, of course, trials by jury implicate the most risky element of dispute resolution – uncertainty.

Court has aptly noted on many occasions, and as counsel are painfully aware, litigation is risky business. Jury trials are even more risky.[23] Regrettably, for litigants, the Court cannot make either risk free.[24] When parties elect a jury trial, "they [knowingly] activate the risk inherent in the system."[25] That is the nature of the beast.

Defendants argue that the Court should grant a new trial or a substantial remittitur in this case because: (1) the vacating of the jury's punitive damages award requires a general new trial on all issues of liability and compensatory damages; (2) the jury's compensatory damages award was excessive, or (3) the jury's punitive damages was excessive.[26]

The Court will address defendants' punitive damages argument first. Defendants claim that the Court erred by allowing the jury to consider the issue of punitive damages, and that once this issue incorrectly went to the jury, the jury was improperly prejudiced by it. In other words, according to defendants, the evidence relevant to punitives tainted the jury and impermissibly colored their view of the evidence relevant to compensatory damages. Defendants argue that "[h]ow this accident happened and the nature and cause of the plaintiff's injury were unique

---

[23] *See Dunkle*, 2002 WL 833375, at *3 ("And, of course, trials by jury implicate the most risky element of dispute resolution – uncertainty.").
[24] *See Savage*, 1995 WL 945563, at *1 ("Trials involve risk and those of involved in the judicial system cannot make litigation risk-free."); *Ellis*, 1995 WL 158691, at * 3 n.1 ("Trials involve risk…People within the system can only do so much; they cannot make litigation risk-free.") *See also Stabler*, 1996 WL 944863.
[25] *See Dunkle*, 2002 WL 833375, at *3 ("And, of course, trials by jury implicate the most risky element of dispute resolution – uncertainty.").
[26] Def. Opening Br., D.I. 62, at 1.

and completely unprecedented..."[27] Consequently, defendants claim they had no actual or constructive notice that injury of this type would occur if the door closer at issue was not repaired. Relying on *Jardel*,[28] defendants point out:

> Where the claim of recklessness is based on an error of judgment, a form of passive negligence, the plaintiff's burden is substantial. It must be shown that the precise harm which eventuated must have been reasonably apparent but consciously ignored in the formulation of the judgment.[29]

Defendants maintain that plaintiff did not discharge this substantial burden.

Plaintiff counters by pointing out, *inter alia*, that (1) PAG knew from a survey[30] performed almost three weeks before plaintiff was injured, that the closer on the second floor rear door of the Brandywine building was not operating properly; (2) PAG had a legal and contractual duty to repair door closers that were not operating properly and to institute a preventive maintenance plan; and (3) although PAG was aware that applicable industry standards required that the broken door closer be repaired (or replaced) within 48 hours, it decided not to hire a third party contractor or have its in-house maintenance staff make the repair. Plaintiff also points out "[t]he jury could reasonably conclude from the evidence that...[PAG's] conduct was particularly reprehensible because it tried to cover up

---

[27] Def. Opening Br., D.I. 62, at 5.
[28] *Jardel*, 523 A.2d 518.
[29] *Id.* at 531.
[30] This survey (hereinafter referred to as the "Campbell Survey"), dated October 27, 2003, was prepared by Eric Campbell, owner of defendant Locks and Protection Devices, Inc.