UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALTERNATIVE HOUSING GROUP, NARRAGANSETT HOUSING PARTNERS, L.P., NARRAGANSETT HOUSING ASSOCIATES, L.P., and PROPERTY ADVISORY GROUP, INC.<br><br>Defendants. | Civil Action No. CA 06 297-T-LDA |

**PLAINTIFF, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Rules 7 and 56 of the Local Rules of the U.S. District Court, the plaintiff hereby moves this honorable Court to grant it partial summary judgment by entering an order declaring that the plaintiff has no obligation to fund or furnish any and all supersedeas bonds needed to secure the judgment against the defendants in the underlying litigation. In the alternative, the plaintiff seeks an order declaring that if the plaintiff was under any obligation to the defendants with respect to the bond, that obligation is limited to funding only the premium required to bond $2 million of the $3 million compensatory damages owed and not the bond itself.

In support of this motion, the plaintiff further states that: a) it has no obligation under the subject insurance policy to furnish a bond; b) it has a good faith basis for disclaiming coverage due to the defendants' untimely notice to plaintiff; and c) under

Rhode Island Law punitive damages are not insurable and thus plaintiff has no obligation to furnish any portion of the supersedeas bond related to the $10 million punitive damages award.

The grounds for this Motion are more fully set forth in the accompanying memorandum of law.

COUGHLIN DUFFY LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: *<u>/s/ Adam M. Smith</u>*
Adam M. Smith

PEABODY & ARNOLD, LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: *<u>/s/ Frederick E. Connelly, Jr.</u>*
Frederick E. Connelly, Jr.

PABOS2:FCONNEL:658480_1
15021-91975

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALTERNATIVE HOUSING GROUP, NARRAGANSETT HOUSING PARTNERS, L.P., NARRAGANSETT HOUSING ASSOCIATES, L.P., and PROPERTY ADVISORY GROUP, INC.<br><br>Defendants. | Civil Action No. CA 06 297-T-LDA |

# MEMORANDUM OF LAW IN SUPPORT OF AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

I. The Underlying Litigation ........ 4

II. The Delaware Trial Court's Denial of Defendants' Post-Trial Motions ........ 6

III. The American Guarantee Excess Policy ........ 8

LEGAL ARGUMENT ........ 9

I. AMERICAN GUARANTEE HAS NO OBLIGATION TO FUND OR FURNISH THE PREMIUM FOR THE PUNITIVE DAMAGES PORTION OF THE SUPERSEDEAS BOND ........ 10

II. AMERICAN GUARANTEE HAS NO OBLIGATION TO FUND OR FURNISH THE SUPERCEDEAS BOND BECAUSE IT HAS RIGHTFULLY DISCLAIMED COVERAGE FOR THE UNDERLYING LITIGATION ........ 11

III. AMERICAN GUARANTEE HAS NO OBLIGATION TO FURNISH THE SUPERSEDEAS BOND AND, IF ANYTHING, WOULD BE REQUIRED TO FUND THE PREMIUM FOR ITS POTENTIAL SHARE OF COMPENSATORY DAMAGES ONLY ........ 13

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. St. Paul Fire and Marine Insurance Co.,
570 F. Supp. 1222 (D.R.I. 1983)....................10

Bartholomew v. Insurance Co. of N. America,
502 F. Supp. 246 (D.R.I. 1980) aff'd., 655 F.2d 27 (1st Cir. 1981)....................10

Providence Journal Company v. The Travelers Indemnity Company,
938 F. Supp. 1066 (D.R.I. 1996)(citing Johnson v. Western Nat. Life Ins. Co., 641 A.2d 47, 48 (R.I. 1994))....................13, 14

S.L. Moore, Sr. v. Columbia Casualty Co.,
174 F. Supp. 566 (S.D. Ill. 1959)....................15

Soar v. National Football League Players' Association,
550 F.2d 1287 (1st Cir.1977)....................10

## STATE CASES

Allen v. Simmons,
533 A.2d 541 (R.I. 1987)....................10

Coderre v. Travelers' Insurance Company,
48 R.I. 152 (1927)....................10

Courvoisier v. Harley Davidson of Trenton, Inc.,
162 N.J. 153 (1999)....................11

Malo v. Aetna Casualty and Sur. Co.,
459 A.2d 954 (R.I. 1983)....................14

Ohio Casualty Insurance Co. v. Gantt,
54 So. 2d 595 (Ala. 1951)....................15

State ex rel. Caulk v. Nichols,
281 A.2d 24 (Del. 1971)....................7

Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc.,
860 A.2d 1210 (R.I. 2004)....................10

United Fire & Casualty Co. v. Shelly Funeral Home, Inc.,
642 N.W.2d 648 (Iowa 2002) ........................................................12

Wilcox v. Board of Education of Warren County,
779 S.W.2d 221 (Ct. App. Ky. 1989) ........................................................11

MISCELLANEOUS

Appleman On Insurance Law & Practice, §136.11[B](Second Ed.) ....................15

Del. Const. Ann., Art. 4, § 24 ........................................................7

Del. S. Ct. Rule 32. ........................................................7

# PRELIMINARY STATEMENT

Miguel Galindez ("Galindez"), the underlying Plaintiff, was the recipient of a $13 million jury verdict. American Guarantee and Liability Insurance Company ("American Guarantee") did not receive notice of the Galindez claim until after the verdict was rendered. Such untimely notice is a material breach of the conditions to coverage, and, as a result, American Guarantee denied coverage to Defendants for that claim. Moreover, $10 million of the $13 million verdict is attributable to a punitive damages award against Defendant Property Advisory Group ("PAG"). Coverage for punitive damages is not permitted in accordance with stated Rhode Island public policy, and, as a result, American Guarantee has denied coverage to PAG on this ground as well.

Nevertheless, the Defendants herein now demand that American Guarantee furnish and contribute funds towards securing a supersedeas bond required to stay execution of the $13 million judgment, notwithstanding the lack of any obligation to do so under American Guarantee's excess insurance policy. American Guarantee respectfully requests that the Court declare that it has no obligation to fund or furnish that portion of the supersedeas bond attributable to the $10 million punitive damages award because punitive damages are not insurable under Rhode Island law. Further, American Guarantee respectfully requests that the Court declare that it has no obligation to fund or furnish any portion of the supersedeas bond based on its good faith disclaimer of coverage for the Underlying Litigation. Finally, American Guarantee respectfully requests that the Court declare that it has no obligation whatsoever to furnish, or become the principal obligor for, a supersedeas bond based on the clear and unambiguous

language of the American Guarantee excess policy, which expressly provides that American Guarantee is not required to furnish such bonds.

In June 2006, American Guarantee filed the present declaratory judgment action in order to resolve a dispute arising out of its issuance of an excess insurance policy to Alternative Housing Group ("AHG"), under which policy the Defendants herein claim insured or additional insured status.

Specifically, the Defendants seek indemnity for a $13 million jury verdict rendered on March 23, 2006, in the underlying matter captioned Galindez v. Narragansett Housing Associates, et al., C.A. No. 04C-05-73 FSS, which is venued in the Superior Court of Delaware (the "Underlying Litigation"). The jury in the Underlying Litigation rendered a verdict in the amount of $3 million in compensatory damages against Narragansett Housing Associates, L.P. ("NHA") and PAG, jointly and severally, and $10 million in punitive damages against PAG alone. American Guarantee was first notified of the Underlying Litigation on March 24, 2006, the day after the jury verdict in the Underlying Litigation. The excess liability policy issued by American Guarantee attaches after the exhaustion of a $1 million primary policy issued by Clarendon National Insurance Company ("Clarendon").

On or about November 28, 2006, the trial court in the Underlying Litigation denied NHA's and PAG's post-trial motions and refused to disturb the jury's compensatory and punitive damages awards. In particular, the trial court was extremely critical of PAG's corporate designee's testimony at trial, which, in the court's words, "doomed" the defense and justified the imposition of punitive damages.

Under Delaware law, to stay the execution of the judgment in the Underlying Litigation, the Defendants will be required to post a supersedeas bond. Notwithstanding that the policy language is clear that American Guarantee has no obligation to furnish such bonds and that American Guarantee rightfully and in good faith disclaimed coverage for the Underlying Litigation, the Defendants have demanded that American Guarantee furnish the required supersedeas bond.

American Guarantee has no obligation to furnish the supersedeas bond or to pay the premium for the portion of the bond attributable to the $10 million punitive damages award. If American Guarantee has any obligation whatsoever to Defendants with respect to the supersedeas bond, that obligation is limited to funding the premium needed to bond the potentially covered portion of compensatory damages only.

Accordingly, by way of this Motion for Partial Summary Judgment, American Guarantee respectfully requests that the Court enter an Order declaring that it has no obligation to fund or furnish any and all supersedeas bonds needed to secure the judgment in the Underlying Litigation. In the alternative, American Guarantee requests that the Court enter an Order declaring that if American Guarantee has any obligation to Defendants with respect to the supersedeas bond, that obligation is limited to funding the premium required to bond $2 million of the $3 million compensatory damages award only.

## STATEMENT OF FACTS

On March 23, 2006, the trial of the Underlying Litigation resulted in an award of $3 million in compensatory damages against NHA and PAG, jointly and severally, and an award of $10 million in punitive damages against PAG only. See Statement of

Undisputed Material Facts ("SUMF"), ¶ 1. On March 24, 2006, AHG's insurance broker advised American Guarantee of the claim at issue herein and the $13 million jury verdict rendered the previous day. Id., ¶ 2. The notice of March 24, 2006, constituted American Guarantee's first notice of the Underlying Litigation. Id. By correspondence to NHA and PAG dated June 26, 2006, American Guarantee disclaimed coverage for the claim that was subject of the Underlying Litigation on the grounds of late notice and otherwise reserved its rights under the terms of the excess policy issued by American Guarantee. Id., ¶ 3. In the declaratory judgment action that American Guarantee filed in this Court on June 27, 2006, American Guarantee seeks a declaration that it has no duty to indemnify Defendants AHG, PAG, NHA or Narragansett Housing Partners, L.P. ("NHP"), with respect to the $13 million jury verdict rendered in the Underlying Litigation. Id., ¶ 4.

## I. The Underlying Litigation

The Underlying Litigation arose out of injuries suffered on November 13, 2003, by Galindez, an employee of CableNet Services, an installation contractor for Comcast, who was injured at the Lexington Green Apartments in Newark, Delaware, when an exterior metal door slammed shut on his right hand, resulting in a crush injury and the amputation of the upper phalange of one finger. Id., ¶ 5. The underlying Plaintiff filed suit in the Superior Court of Delaware, New Castle County, alleging that NHA, as building owner, was liable for his injuries. Id., ¶ 6.

Clarendon provided primary coverage to AHG under a commercial general liability insurance policy that named NHP as an additional insured (the "Clarendon Primary Policy"). Id., ¶ 9. In or about June, 2004, Clarendon agreed to defend NHA and

assigned North American Risk Services ("NARS"), a third-party claims administrator, to handle the matter. Id., ¶ 10. NARS, in turn, retained the law firm of Marshall, Dennehey to defend Narragansett in the Underlying Litigation. Id., ¶ 11.

The Underlying Litigation was originally arbitrated and resulted in an award of $100,000. Id., ¶ 7. NHA, without notice to American Guarantee, rejected the arbitration award. Id., ¶ 8.

On or about October 10, 2005, Galindez filed an Amended Complaint that added PAG as a defendant in the Underlying Litigation. Id., ¶ 12. Again, Defendants failed to notify American Guarantee of the Underlying Litigation. The Amended Complaint asserted that PAG negligently owned and/or operated and/or managed the Lexington Green Apartments so as to permit a dangerous condition to exist on the property. Id., ¶ 13. The Amended Complaint also added a punitive damages claim against all defendants. Id., ¶ 14.

During the course of discovery, the underlying Plaintiff produced vocational and economic expert reports to support his claim of over $600,000 in past and future lost wages. Id., ¶ 15. Still, Defendants chose not to put American Guarantee on notice of the Underlying Litigation. Plaintiff also produced a medical expert report opining on the permanency of his damages. Id., ¶ 16. Defendants, however, produced no expert reports, nor did they file any motions to dismiss or to bifurcate the punitive damages aspect of the case. Id., ¶ 17.

On March 23, 2006, the jury in the Underlying Litigation rendered a $3 million compensatory damages verdict against the Defendants and a $10 million punitive damages verdict against PAG alone. Id., ¶ 1. Finally, only after the rendering of the

jury's $13 million verdict, was American Guarantee advised of the existence of the Underlying Litigation.

On or about April 5, 2006, shortly after the jury's rendering of it $13 million verdict, NHA and PAG filed a Motion for New Trial or Remittitur. Id., ¶ 18. Additionally, PAG filed a Motion for Judgment as a Matter of Law with respect to the large punitive damages award. Id., ¶ 19.

## II. The Delaware Trial Court's Denial of Defendants' Post-Trial Motions

On November 28, 2006, the Hon. Jan R. Jurden of the Superior Court of Delaware, New Castle County, entered an Opinion denying NHA's and PAG's Motion for New Trial or Remittitur and PAG's Motion for Judgment as a Matter of Law. Id., ¶ 20. Accordingly, the jury's $13 million verdict against the Defendants, which includes the $10 million punitive damages award against PAG, still stands, pending Defendants' appeal to the Supreme Court of Delaware.

In support of its reasoning to refuse to vacate the punitive damages award against PAG, the Court specifically cited the testimony of PAG representative Susan Rimel ("Rimel") to demonstrate PAG's callous and reckless behavior. Id., ¶ 21. Rimel testified as follows about PAG's handling of maintenance issues at the Lexington Green Apartments, where Galindez was injured:

> If somebody called and told us the closer was completely broke off and the door was slamming, I would send somebody over there, but if they called and say it's hanging open – the biggest problem in the hallways of Lexington Green is vandalism. They are always breaking the closers off because they don't want the doors shut, "they" being the people hanging in the hallways that are independent pharmacists, I guess is the word. They like to sell their own brands, and children doing vandalism, they're always breaking the door closers, the glass. We

> changed from glass to plexiglass because there was so much of the glass broken out of the doors, and the handles, and that's because they tied the door open . . .
>
> Those – those slide plates were broke within three months of being put on. None of them worked. The residents broke them. They don't want them there, because when the police are chasing them, they go straight through the buildings . . .
>
> [Id., ¶ 22.]

Judge Jurden characterized Rimel's testimony as "the proverbial 'icing on the cake.'" Id., ¶ 23.

NHA and PAG are appealing the trial court's denial of their post-trial motions to the Supreme Court of Delaware, and have "demand[ed] that [American Guarantee] contribute funds necessary to secure any Supersedeas Bond required to secure a stay of execution pending appeal." Id., ¶ 24.

The Delaware Constitution requires that an appellant post a bond to stay proceedings in the trial court pending the outcome of an appeal. See Del. Const. Ann., Art. 4, § 24. Accordingly, if an appellant fails to post the requisite bond, the appeal will not stay operation of the judgment. See, e.g., State ex rel. Caulk v. Nichols, 281 A.2d 24, 27 (Del. 1971). This requirement is also memorialized in the Delaware Rules of Court for the Supreme Court, which provide that,

> A stay or injunction pending appeal shall be granted upon the filing and approval of sufficient security. . . . (i) . . . Security for a stay or injunction shall be a supersedeas bond or other security . . . (ii) With regard to a judgment or a portion of a judgment for a sum of money, the security shall ordinarily equal such sum of money and all costs and damages, including damages for delay. The trial court shall have the discretion to set security at a lesser amount.
>
> [Del. S. Ct. Rule 32.]

Thus, while a bond is not required for appeal purposes, it is necessary in order to stay execution of the judgment.

## III. The American Guarantee Excess Policy

American Guarantee issued commercial umbrella policy no. AUC 3634609-01 to Residential Resource Associates, Inc. (A Risk Purchasing Group) for the period December 1, 2001 to December 1, 2004 (the "American Guarantee Excess Policy"). See SUMF, ¶ 25. Certificate of Insurance No. 2415ZU, evidencing that the American Guarantee Excess Policy provided the enumerated coverage to the named insured AHG, as a member of the risk purchasing group, was issued for the period January 1, 2003 to January 1, 2004. Id., ¶ 26. An endorsement to the American Guarantee Excess Policy effective November 20, 2003, named NHP as an additional insured under the American Guarantee Excess Policy. Id., ¶ 27. The American Guarantee Excess Policy attaches after the exhaustion of the $1 million limits of the Clarendon Primary Policy. Id., ¶ 28.

The following relevant language regarding American Guarantee's duty to defend is contained in the American Guarantee Excess Policy:

> **SECTION III. DEFENSE AND SUPPLEMENTARY PAYMENTS**
>
> **A.** We have the right and duty to assume control of the investigation, settlement or defense of any claim or suit against the insured for damages covered by this policy:
>
> **1.** Under Coverage A [Excess Follow Form Liability Insurance], **when the applicable limit of underlying insurance has been exhausted by payment of claims.**
>
> ***
>
> **B.** In those circumstances where paragraph **A.** above applies, in addition to the applicable Limits of Insurance, we will

> pay our expenses and the following to the extent that they are not included in underlying insurance:
>
> ***
>
> **2. The cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. We do not have to furnish these bonds.**
>
> ***

> **C.** In those circumstances where paragraph A. above does not apply, we do not have the duty to assume control of the investigation, settlement or defense of any claim or suit against the insured. We do, however, have the right to participate in the investigation, settlement or defense of any claim or suit that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

[Id., ¶ 29 (emphasis added).]

Meanwhile, the Clarendon Primary Policy's Insuring Agreement applicable to "bodily injury" liability under Coverage A provides that Clarendon "will have the right and duty to defend the insured against any 'suit' seeking" damages for bodily injury, and also states the following in regard to when Clarendon's duty to defend ends:

> Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

[Id., ¶ 30.]

## LEGAL ARGUMENT

### I.

### AMERICAN GUARANTEE HAS NO OBLIGATION TO FUND OR FURNISH THE PREMIUM FOR THE PUNITIVE DAMAGES PORTION OF THE SUPERSEDEAS BOND

Punitive damages are not insurable in the State of Rhode Island.[1] The Supreme Court of Rhode Island has held that the shifting of a punitive damages award from a tortfeasor to an insurer is contrary to public policy. Allen v. Simmons, 533 A.2d 541, 544 (R.I. 1987). In analyzing the issue of whether punitive damages are insurable under Rhode Island law, the Supreme Court of Rhode Island has held that "the sounder approach bars the wrongdoer from shifting the punitive damages to the insurer." Id. at 544.

More recently, in Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc., 860 A.2d 1210, 1218-19 (R.I. 2004), the Supreme Court of Rhode Island summarized the issue it addressed in Allen as "whether liability for punitive damages may be shifted to the insurer." While Cumberland did not directly involve the issue of punitive damages, the Court noted that "[c]ertainly, were we faced with an award of punitive damages against the town officials responsible for the fraudulent acts underlying this suit, we would not permit those damages to be shifted to the insurers." Cumberland, 860 A.2d at 1219.

---

1 The insureds are, upon information and belief, located in Rhode Island and Rhode Island is the state where the policy was delivered and from which premiums were paid. Rhode Island utilizes the place of contracting to resolve conflict of laws issues. See Coderre v. Travelers' Insurance Company, 48 R.I. 152, 155 (1927) ("in the absence of a special provision in the contract to the contrary, a contract is to be construed in accordance with the law of the state where it is made."); Soar v. National Football League Players' Association, 550 F. 2d 1287, 1289-90 n.5 (1st Cir.1977); Anderson v. St. Paul Fire and Marine Ins. Co., 570 F. Supp. 1222, 1223 n.1 (D.R.I. 1983); Bartholomew v. Insurance Co. of N. Am., 502 F. Supp. 246, 250 (D.R.I. 1980) aff'd., 655 F.2d 27 (1st Cir. 1981).

Rhode Island law is clear that the punitive damages award against PAG is not a liability that can be shifted to American Guarantee under the policy at issue, assuming that American Guarantee even has any coverage obligation to PAG. Because American Guarantee would have no obligation under Rhode Island law to pay for the punitive portion of the award, it follows that it would not be required to pay the premium for the supersedeas bond related to the punitive damages portion of the judgment. Other courts have held that insurers need only pay the cost of a bond for the portion of a judgment that the insurers would be contractually obligated to pay. See, e.g., Courvoisier v. Harley Davidson of Trenton, Inc., 162 N.J. 153, 162-63 (1999) (an insurer only obligated to bond the amount of a judgment it would be obligated to pay); Wilcox v. Bd. of Educ. of Warren County, 779 S.W.2d 221, 223 (Ct. App. Ky. 1989) (insurer "need not commit to satisfying more than the amount it is obligated to pay").

Accordingly, American Guarantee has no obligation to fund the premium for or furnish the supersedeas bond attributable to the $10 million punitive damages award.

## II.

## AMERICAN GUARANTEE HAS NO OBLIGATION TO FUND OR FURNISH THE SUPERSEDEAS BOND BECAUSE IT HAS RIGHTFULLY DISCLAIMED COVERAGE FOR THE UNDERLYING LITIGATION

In its disclaimer letter dated June 26, 2006, American Guarantee disclaimed coverage for the claim that was the subject of the Underlying Litigation on the grounds of late notice and otherwise reserved its rights under the terms of the American Guarantee Excess Policy. See SUMF, ¶ 3. Thereafter, American Guarantee followed its disclaimer with the filing of the instant declaratory judgment action on June 27, 2006. Id., ¶ 4.

An insurer that disclaims coverage in good faith should not be required to fund or furnish a supersedeas appeal bond. See, e.g., United Fire & Casualty Co. v. Shelly Funeral Home, Inc., 642 N.W.2d 648 (Iowa 2002). In United Fire, the Court reasoned that:

> Given the insurer's good-faith doubts about coverage, and the underlying purpose of the bond to secure the judgment, we agree it was reasonable for [the insurer] not to place itself in a position of assuming liability on the bond no matter the outcome of the appeal.

Id. at 658.[2]

As demonstrated above, the Defendants here had numerous opportunities to notify American Guarantee of the Underlying Litigation but, for reasons that only Defendants know, they chose not to do so. Defendants certainly had an obligation to put American Guarantee on notice after NHA rejected the $100,000 arbitration award and chose to risk an even greater award at trial. Thereafter, there were numerous other times when Defendants should have realized that they faced the possibility of a significant excess verdict but did not provide American Guarantee with notice of the Underlying Litigation. For example, the underlying Plaintiff produced vocational and expert reports opining that his past and future lost wages alone totaled in excess of $600,000. See SUMF, ¶¶ 15-16. Defendants did not retain their own experts, nor did they put American Guarantee on notice of a claim that had a strong likelihood of exceeding the $1 million limits of the Clarendon Primary Policy (particularly if the underlying Plaintiff's experts' opinions went unrebutted at trial). Id., ¶ 17. In another instance, PAG's own representative took

2 The policy at issue in United Fire & Casualty Co., 642 N.W.2d at 648, like the American Guarantee Excess Policy, provided that the insurer had no obligation to "furnish" bonds on behalf of its insured, a fact upon which the court heavily relied.

the witness stand at trial and gave testimony that did significant damage to Defendants' case when, among other things, she spoke in a derogatory fashion about the residents of the Lexington Green Apartments, broadly condemning them all to be little more than vandals, criminals and drug dealers. Id., ¶ 22. Despite the damaging testimony of PAG's representative, the Defendants again chose not to put American Guarantee on notice of the Underlying Litigation, at a time when it was still possible to settle the matter for potentially far less than the $13 million the jury ultimately awarded. Only after the jury rendered its excess verdict did Defendants see fit to put American Guarantee on notice at a time when American Guarantee could have no impact on the course of the Underlying Litigation and the damage had already been done. On this basis, American Guarantee had legitimate and good faith grounds on which to disclaim coverage for the Underlying Litigation and should not be required to fund or furnish the supersedeas bond.

Accordingly, American Guarantee has no obligation to fund or furnish any portion of the supersedeas bond in the Underlying Litigation based on American Guarantee's good faith disclaimer of coverage.

## III.

## AMERICAN GUARANTEE HAS NO OBLIGATION TO FURNISH THE SUPERSEDEAS BOND AND, IF ANYTHING, WOULD BE REQUIRED TO FUND THE PREMIUM FOR ITS POTENTIAL SHARE OF COMPENSATORY DAMAGES ONLY

Under well-settled Rhode Island law on the construction of insurance policies, the intent of the parties to the insurance agreement is ascertained by looking at the entire policy. Providence Journal Company v. The Travelers Indemnity Company, 938 F.Supp. 1066, 1073 (D.R.I. 1996)(citing Johnson v. Western Nat. Life Ins. Co., 641 A.2d 47, 48 (R.I. 1994)). Moreover, the language used in the policy must be given its plain, ordinary,

and usual meaning, and when the terms are found to be clear and unambiguous, the task of judicial construction is at an end. Providence Journal Company, 938 F.Supp. at 1073 (citing Malo v. Aetna Casualty and Sur. Co., 459 A.2d 954, 956 (R.I. 1983)). The contract terms must then be applied as written. Id.

Here, the American Guarantee Excess Policy clearly and unambiguously addresses the fact that American Guarantee has no obligation to furnish supersedeas bonds. Section III of the American Guarantee Excess Policy is entitled "Defense and Supplementary Payments." At paragraph A, the policy provides that,

> We have the right and duty to assume control of the investigation, settlement or defense of any claim or suit against the insured for damages covered by this policy:
>
> 1. . . . when the applicable limit of underlying insurance has been exhausted by payment of claims.

[SUMF, ¶ 29.]

In the next paragraph of the American Guarantee Excess Policy, it states the following:

> In those circumstances where paragraph A. above applies, in addition to the applicable Limits of Insurance, we will pay our expenses and the following to the extent that they are not included in underlying insurance: . . . The cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. **We do not have to furnish these bonds.**

[Id. (emphasis added.)]

The above language is clear that American Guarantee has no obligation to furnish a supersedeas bond, even if coverage were available and it had assumed a duty to defend. The policy language is consistent with only one interpretation - that the insurer may be required to pay the premium for, but not furnish, any necessary appeal bond. See, e.g.,

Ohio Cas. Ins. Co. v. Gantt, 54 So.2d 595, 598 (Ala. 1951)(noting distinction between obligation to pay premium on appeal bonds and obligation to "apply for or furnish such bonds"). Similarly, the Court in S.L. Moore, Sr. v. Columbia Cas. Co., 174 F. Supp. 566, 573 (S.D. Ill. 1959), held that an insurer did not have to furnish or post a bond when its policy language explicitly stated that it was "without any obligation to apply for or furnish any such bonds." As the Court stated:

> Moore [the insured] had the right to himself perfect an appeal if he saw fit to do so, in which event it would be up to him to provide the appeal bond, the only obligation of the Insurance Company being to pay the premium therefore. See also, Appleman On Insurance Law & Practice, §136.11[B](Second Ed.).

At most, American Guarantee's obligation with respect to any supersedeas bond necessary to stay execution of the appeal in the Underlying Litigation is to fund the premium for bond amounts within the policy limits. See SUMF, ¶ 29. American Guarantee has no obligation to furnish or become the principal obligor for such bond. Here, if American Guarantee has any obligation whatsoever with respect to the supersedeas bond that obligation would be limited to funding the premium needed to bond damages that are potentially covered under the American Guarantee Excess Policy (*i.e.*, the premium for bonding $2 million of the $3 million compensatory damages award).

Finally, it must be emphasized that American Guarantee is not the only potential source of funding for the Defendants. Clarendon "managed" this claim from the beginning and could have paid the $100,000 arbitration award. For reasons that defy logic, that award was rejected and Defendants and Clarendon failed to hire any experts, failed to realize that even the court seemed offended by the trial testimony of PAG's

representative and failed to put American Guarantee on notice until after the jury had rendered its $13 million verdict. Under these circumstances, American Guarantee should not be obligated to fund the premium necessary to bond the $13 million judgment in the Underlying Litigation

Accordingly, American Guarantee has no obligation to furnish the supersedeas bond in the Underlying Litigation and, if anything, would only be obligated to fund the premium required to bond $2 million of the $3 million compensatory damages award.

**CONCLUSION**

Accordingly, American Guarantee respectfully requests that the Court enter an Order declaring that it has no obligation to fund or furnish any and all supersedeas bonds needed to secure the judgment in the Underlying Litigation. In the alternative, American Guarantee requests that the Court enter an Order declaring that if American Guarantee has any obligation to Defendants with respect to the supersedeas bond, that obligation is limited to funding the premium required to bond $2 million of the $3 million compensatory damages award only; American Guarantee has no obligation to furnish the bond.

Respectfully submitted,

COUGHLIN DUFFY LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: *_/s/ Adam M. Smith_*
Adam M. Smith

PEABODY & ARNOLD, LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: *_/s/ Frederick E. Connelly, Jr._*
Frederick E. Connelly, Jr.

Dated: March 30, 2007