(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earning up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.


Copyright, Insurance Services Office, Inc., 1996

6. **Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

 Copyright, Insurance Services Office, Inc., 1998 

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

12. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

13. **Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

2. **Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension**

We will pay up to $15 per day to a maximum of $450 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.


Copyright, Insurance Services Office, Inc., 1996

b. **War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions 4.c. and 4.d. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

C. **Limit Of Insurance**

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

D. **Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

 Copyright, Insurance Services Office, Inc., 1998 

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

 Copyright, Insurance Services Office, Inc., 1996 

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

 Copyright, Insurance Services Office, Inc., 1996 

B. Owned Autos You Acquire After The Policy Begins

1. If Symbols 1, 2, 3, 4, 5 or 6 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. "Loss"; or

e. Destruction.

SECTION II – LIABILITY COVERAGE

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. Coverage Extensions

a. Supplementary Payments

In addition to the Limit of Insurance, we will pay for the "insured":

(1) All expenses we incur.

 Copyright, Insurance Services Office, Inc., 1996 

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earning up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

 Copyright, Insurance Services Office, Inc., 1996 

6. **Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

 Copyright, Insurance Services Office, Inc., 1996 

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

12. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

a. Comprehensive Coverage

From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

b. Specified Causes Of Loss Coverage

Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

c. Collision Coverage

Caused by:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

2. Towing

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. Coverage Extension

We will pay up to $15 per day to a maximum of $450 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a. Nuclear Hazard

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

 Copyright, Insurance Services Office, Inc., 1996 

b. War Or Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions 4.c. and 4.d. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

C. Limit Of Insurance

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.


Copyright, Insurance Services Office, Inc., 1996

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

 Copyright, Insurance Services Office, Inc., 1996 

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

 Copyright, Insurance Services Office, Inc., 1996 

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand or order; or
2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**F.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**G.** "Insured contract" means:

1. A lease of premises;
2. A sidetrack agreement;
3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;
6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

 Copyright, Insurance Services Office, Inc., 1996 

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

H. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

I. "Loss" means direct and accidental loss or damage.

J. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in Paragraphs 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

K. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

L. "Property damage" means damage to or loss of use of tangible property.

M. "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

N. "Temporary worker" means a person who is furnished to you for a finite time period to support or supplement your workforce in special work situations such as "employee" absences, temporary skill shortages and seasonal workloads.

O. "Trailer" includes semitrailer.

 Copyright, Insurance Services Office, Inc., 1996 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – TOWNHOUSES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. WHO IS AN INSURED (Section II) is amended to include as an insured:

1. The developer in the developer's capacity as a townhouse unit-owner, but only with respect to the developer's liability arising out of:

   a. The ownership, maintenance, repair or use of that portion of the real property which is not owned solely by the developer; or

   b. The developer's membership in the townhouse association.

   However, the insurance afforded with respect to the developer does not apply to liability for acts or omissions as a developer.

2. Each individual townhouse unit-owner, but only with respect to liability arising out of the townhouse unit-owner's membership in the townhouse association or the ownership, maintenance, repair or use of that portion of the real property which is not owned solely by the townhouse unit-owner.

B. Paragraph **a.** of the OTHER INSURANCE Condition (Section IV – Commercial General Liability Conditions) is replaced by the following:

   a. Primary Insurance

   This insurance is primary over any other insurance available to the townhouse unit-owner, except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

C. The REPRESENTATIONS Condition (Section IV – Commercial General Liability Conditions) is amended by the addition of the following:

No act or omission by the townhouse unit-owner, unless acting within the scope of the townhouse unit-owner's authority on behalf of the townhouse association, will void the policy or be a condition of recovery under the policy.

D. The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – Commercial General Liability Conditions) is amended by the addition of the following:

We waive any rights which this Condition may give us against:

1. Any townhouse unit-owner, including the developer, and any household members;
2. The townhouse association; and
3. Members of the board of directors for acts or omissions within the scope of their duties for you.

However, we reserve our right to recover against the developer for acts or omissions that the developer may be liable for in the capacity as a developer.

E. The WHEN WE DO NOT RENEW CONDITION (Section IV – Commercial General Liability Conditions) is replaced by the following and supersedes any other provision to the contrary:

**WHEN WE DO NOT RENEW**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations, each townhouse unit-owner and each holder of a security interest to whom we issued a certificate or memorandum of insurance, written notice of the nonrenewal not less than 60 days before the expiration date. The notices will be sent to the respective mailing addresses last known to us.

If notice is mailed, proof of mailing will be sufficient proof of notice.

F. Paragraph **2.** of the CANCELLATION Common Policy Conditions is replaced by the following and supersedes any provision to the contrary:

We may cancel this policy by mailing or delivering written notice of cancellation, at least 60 days before the effective date of cancellation to the first Named Insured, each townhouse unit-owner and each holder of a security interest to whom we issued a certificate or memorandum of insurance.

 Copyright, Insurance Services Office, Inc., 1993 

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 28 57 09 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – LIQUOR LIABILITY

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

**SCHEDULE**

| | Limits Of Insurance |
|---|---|
| Each Person Limit | $ |
| Each Common Cause Limit | $ |
| Aggregate Limit | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The Limits of Insurance shown in the Declarations are replaced by the limits shown in the schedule above.

**B.** **Section III – Limits Of Insurance** is replaced by the following:

1. The Limits of Insurance shown above and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".
2. The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.
3. Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by all persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.
4. Subject to the Each Common Cause Limit, the Each Person Limit is the most we will pay for all "injury" sustained by any one person or organization as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

 © ISO Properties, Inc., 2000 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES – CONDOMINIUMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. WHO IS AN INSURED (Section II) is amended to include as an insured:

1. The developer in the developer's capacity as a unit-owner, but only with respect to the developer's liability arising out of:

   a. The ownership, maintenance, repair or use of that portion of the premises which is not owned solely by the developer; or

   b. The developer's membership in the condominium association.

   However, the insurance afforded with respect to the developer does not apply to liability for acts or omissions as a developer.

2. Each individual unit-owner of the insured condominium, but only with respect to liability arising out of the unit-owner's membership in the condominium association or the ownership, maintenance, repair or use of that portion of the premises which is not owned solely by the unit-owner.

B. Paragraph a. of the OTHER INSURANCE Condition (Section IV – Commercial General Liability Conditions) is replaced by the following:

   a. Primary Insurance

   This insurance is primary over any other insurance available to the unit-owner, except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

C. The REPRESENTATIONS Condition (Section IV – Commercial General Liability Conditions) is amended by the addition of the following:

No act or omission by the unit-owner, unless acting within the scope of the unit-owner's authority on behalf of the condominium association, will void the policy or be a condition of recovery under the policy.

D. The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – Commercial General Liability Conditions) is amended by the addition of the following:

We waive any rights which this Condition may give us against:

1. Any unit-owner, including the developer, and any household members;
2. The condominium association; and
3. Members of the board of directors for acts or omissions within the scope of their duties for you.

However, we reserve our right to recover against the developer for acts or omissions that the developer may be liable for in the capacity as a developer.

E. The WHEN WE DO NOT RENEW CONDITION (Section IV – Commercial General Liability Conditions) is replaced by the following and supersedes any other provision to the contrary:

**WHEN WE DO NOT RENEW**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations, each unit-owner and each holder of a security interest to whom we issued a certificate or memorandum of insurance, written notice of the nonrenewal not less than 60 days before the expiration date. The notices will be sent to the respective mailing addresses last known to us.

If notice is mailed, proof of mailing will be sufficient proof of notice.

F. Paragraph 2. of the CANCELLATION Common Policy Conditions is replaced by the following and supersedes any provision to the contrary:

We may cancel this policy by mailing or delivering written notice of cancellation, at least 60 days before the effective date of cancellation to the first Named Insured, each unit-owner and each holder of a security interest to whom we issued a certificate or memorandum of insurance.

 Copyright, Insurance Services Office, Inc., 1993 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** Cancellation of policies in effect for less than 60 days.

If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** Cancellation of policies in effect for 60 days or more.

**a.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

**(d)** Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

**(e)** A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

**(2)** 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

**(a)** Physical changes in the property which increase the hazard insured against;

**(b)** A material increase in the hazard insured against; or

**(c)** A substantial loss of reinsurance by us affecting this particular line of insurance.

**b.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph **3.a.** above.

**c.** If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

 Copyright, Insurance Services Office, Inc., 2000 

d. Notice of Cancellation will be delivered or sent by:

(1) Registered mail;

(2) Certified mail; or

(3) Mail evidenced by a United States Post Office certificate of mailing.

4. We will give notice to you at your last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. The following is added and supersedes any other provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

2. This notice will be delivered or sent by:

a. Registered mail;

b. Certified mail; or

c. Mail evidenced by a certificate of mailing.

If notice is mailed, proof of mailing is sufficient proof of notice.

3. However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

4. With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

 Copyright, Insurance Services Office, Inc., 2000 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RHODE ISLAND CHANGES – PREJUDGMENT INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGE HOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The paragraph in the Supplementary Payments Section relating to prejudgment interest is replaced by the following:

1. Prejudgment interest awarded against you* on the entire judgment if we reject a written settlement offer by the plaintiff that is equal to or less than the applicable limit of insurance in this policy; or
2. If Paragraph 1. above does not apply, prejudgment interest awarded against you* on that part of the judgment we pay.

* For the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part, Employment-Related Practices Liability Coverage Part, Farm Coverage Part, Liquor Liability Coverage Part, Owners And Contractors Protective Liability Coverage Part, Pollution Liability Coverage Part, Products/Completed Operations Liability Coverage Part, Professional Liability Coverage Part, Railroad Protective Liability Coverage Part and the Underground Storage Tank Policy the word you is replaced by the term "the insured".

 © ISO Properties, Inc., 2000 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RHODE ISLAND CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** With respect to the:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
FARM – LIVESTOCK COVERAGE FORM
FARM – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM;

Paragraph **1.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by giving, mailing or delivering advance written notice of cancellation to us or to our agent who issued the policy.

**C.** With respect to all Coverage Parts and Policies addressed in this Endorsement, the **CANCELLATION** Common Policy Condition is amended by replacing Paragraphs **2.**, **3.**, **5.** and **6.** with the following:

**2.** We may cancel this policy by giving, mailing or delivering to the first Named Insured and agent, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**c.** Activities or omissions on your part which increase any hazard insured against, including a failure to comply with loss control recommendations;

**d.** Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

**e.** Loss or decrease of our reinsurance covering all or part of the risk or exposure covered by the policy;

**f.** Determination by the Commissioner of Insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this state;

 © ISO Properties, Inc., 2001 

g. Owner or occupant incendiarism;

h. Violation or breach by you of any policy terms or conditions;

i. Constructive or actual total loss of the Covered Property;

j. Such other reasons as may be approved by the Commissioner of Insurance.

3. We will give, mail or deliver written notice to the first Named Insured at the last address known to us, and to the agent, if any.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, if this policy is financed under a premium finance agreement and we cancel at the request of the premium finance company upon default of the first Named Insured, the refund will be pro rata.

The cancellation will be effective even if we have not made or offered a refund.

6. Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

D. With respect to all Coverage Parts and Policies addressed in this Endorsement, the following is added to the **CANCELLATION** Common Policy Condition:

7. We will provide you with the reason or reasons for cancellation if:

a. You request in writing a statement of the reasons for cancellation; and

b. You agree in writing to hold us harmless from liability for any:

(1) Communication giving notice of, or specifying the reasons for, cancellation; or

(2) Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under Paragraph **C.2.** above.

E. With respect to all Coverage Parts and Policies addressed in this Endorsement, the following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will give, mail or deliver to the first Named Insured and agent, if any, written notice of nonrenewal at least 30 days before:

a. The expiration date of the policy; or

b. An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

2. However, we need not give, mail or deliver this notice if:

a. We have offered to issue a renewal policy; or

b. The first Named Insured has obtained, or has agreed in writing to obtain, replacement coverage.

F. With respect to the:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
FARM – LIVESTOCK COVERAGE FORM
FARM – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM;

The following are added to the Common Policy Conditions:

If notice of cancellation or nonrenewal is mailed to the insured, we will use certified mail, return receipt requested. We will also obtain a written receipt from the United States Postal Service, showing the name and address of the first Named Insured stated in the policy; this receipt will be sufficient proof of notice. If we do not receive a return receipt within 10 days, we shall forward the notice of cancellation or nonrenewal by first class mail and maintain proof of mailing. This proof of mailing will be sufficient proof of notice.

We will also give, mail or deliver written notice of cancellation, subject to **C.2.** above, and written notice of nonrenewal, subject to **E.1.** above, to any loss payee named in the policy. Mailing will be accomplished in accordance with the procedure stated in the above paragraph.

 © ISO Properties, Inc., 2001 

G. Under the **MORTGAGE HOLDERS** Condition, the paragraphs pertaining to cancellation and nonrenewal are replaced by the following:

1. If we cancel this policy, we will give, mail or deliver written notice to the mortgage holder at least:
   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
2. If we do not renew this policy, we will give, mail or deliver written notice to the mortgage holder at least 10 days before:
   a. The expiration date of the policy; or
   b. An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.
3. If notice of cancellation or nonrenewal is mailed, we will use certified mail, return receipt requested. We will also obtain a written receipt from the United States Postal Service, showing the name and address of the mortgage holder stated in the policy; this receipt will be sufficient proof of notice. If we do not receive a return receipt within 10 days, we shall forward the notice of cancellation or nonrenewal by first class mail and maintain proof of mailing. This proof of mailing will be sufficient proof of notice.


© ISO Properties, Inc., 2001

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
CLARENDON NATIONAL INSURANCE COMPANY

5

Agent:
BREED'S HILL INSURANCE AGENCY, INC.

Place of issue
BOSTON, MA

Date of Issue
11/20/2003

Endorsement effective (standard time)
Hour 12:01 A. M.

Month / Day / Year
9/17/2003

Amending policy no.
Clarendon National Ins., Co. / BHL 241500

Issued to:
Alternative Housing Group

State code

Agent Code
094010000

Agent name
Breed's Hill Insurance Agency, Inc.

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $4,536.00, IT IS HEREBY AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THIS POLICY:

1201 Kingstown, Bldg., Freedom Rd., Newark, DE 09702

ADDITIONAL INSURED:

Narragansett Housing Partners, L.P. Donald Goodrich, GP
Delaware State Housing Authority
18 The Green
Dover, DE 19901

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Additional premium
$4,536.00

Return premium
$0.00

Signature of Authorized Representative