UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALTERNATIVE HOUSING GROUP, NARRAGANSETT HOUSING PARTNERS, L.P., NARRAGANSETT HOUSING ASSOCIATES, L.P., and PROPERTY ADVISORY GROUP, INC.<br><br>Defendants. | Civil Action No. CA 06 297-T-LDA<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1** |

Plaintiff, American Guarantee and Liability Insurance Company ("American Guarantee"), by and through its attorneys, Coughlin Duffy LLP and Peabody & Arnold, LLP, as and for its Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, states as follows:

1. On March 23, 2006, the trial of the underlying Delaware state court litigation, Galindez v. Narragansett Housing Associates, et al., C.A. No. 04C-05-73 FSS (the "Underlying Litigation"), resulted in an award of $3 million in compensatory damages against Narragansett Housing Associates, L.P. ("NHA") and Property Advisory Group, Inc. ("PAG"), jointly and severally, and an award of $10 million in punitive damages against PAG only. See Declaratory Judgment Complaint ("Complaint") at ¶ 13, annexed as Exhibit A to the Certification of Adam M. Smith ("Smith Cert."). See also Opinion of Hon. Jan R. Jurden ("Opinion") in the Underlying Litigation at pp. 3-4, annexed as Exhibit B to the Smith Cert.

2. On March 24, 2006, AHG's insurance broker provided American Guarantee with first notice of claim with respect to the Underlying Litigation and the $13 million jury verdict rendered the previous day. Smith Cert. at Exhibit A, ¶ 14.

3. By correspondence to NHA and PAG dated June 26, 2006, American Guarantee disclaimed coverage for the claim that was subject of the Underlying Litigation on the grounds of late notice and otherwise reserved its rights under the terms of the excess policy issued by American Guarantee. Id., ¶ 51.

4. In the declaratory judgment action that American Guarantee filed in this Court on June 27, 2006, American Guarantee seeks a declaration that it has no duty to indemnify Defendants AHG, PAG, NHA or Narragansett Housing Partners, L.P. ("NHP"), with respect to the $13 million jury verdict rendered in the Underlying Litigation. Id., ¶ 16.

5. The Underlying Litigation arose out of injuries suffered on November 13, 2003, by Miguel Galindez ("Galindez" or the "underlying Plaintiff"), an employee of CableNet Services, an installation contractor for Comcast, who was injured at the Lexington Green Apartments in Newark, Delaware, when an exterior metal door slammed shut on his right hand, resulting in a crush injury and the amputation of the upper phalange of one finger. Id., ¶ 35. See also Smith Cert. at Exhibit B, p.3.

6. The underlying Plaintiff filed suit in the Superior Court of Delaware, New Castle County, alleging that NHA, as building owner, was liable for his injuries. Smith Cert. at Exhibit A, ¶ 34.

7. The case was originally arbitrated and resulted in an award of $100,000. Id., ¶¶ 38-40.

8. NHA rejected the arbitration award. Id.

9. Clarendon provided primary coverage to AHG under a commercial general liability insurance policy that named NHP as an additional insured (the "Clarendon Primary Policy"). Id. at ¶ 12. See also Clarendon Primary Policy, annexed as Exhibit C to the Smith Cert.

10. In or about June, 2004, Clarendon agreed to defend NHA and assigned North American Risk Services ("NARS"), a third-party claims administrator, to handle the matter. Smith Cert. at Exhibit A, ¶ 37.

11. NARS retained the law firm of Marshall, Dennehey to defend Narragansett in the Underlying Litigation. Id.

12. On or about October 10, 2005, Galindez filed an Amended Complaint that added PAG as a defendant in the Underlying Litigation. Id., ¶ 41.

13. The Amended Complaint asserted that PAG negligently owned and/or operated and/or managed the Lexington Green Apartments so as to permit a dangerous condition to exist on the property. Id.

14. The Amended Complaint also added a punitive damages claim against all defendants. Id., ¶ 42.

15. During discovery, the underlying Plaintiff produced vocational and economic expert reports to support his claim of over $600,000 in past and future lost wages. Id., ¶ 43. See also Smith Cert. at Exhibit B, p. 15.

16. Plaintiff also produced a medical expert report opining on the permanency of his damages. Smith Cert. at Exhibit A, ¶ 43. See also Smith Cert. at Exhibit B, p. 15.

17. Defendants, however, produced no expert reports, nor did they file any motions to dismiss or to bifurcate the punitive damages aspect of the case. Smith Cert. at Exhibit A, ¶ 44. See also Smith Cert. at Exhibit B, p. 15.

18. On or about April 5, 2006, shortly after the jury's rendering of it $13 million verdict, NHA and PAG filed a Motion for New Trial or Remittitur. Smith Cert. at Exhibit B.

19. On or about April 5, 2006, PAG filed a Motion for Judgment as a Matter of Law with respect to the large punitive damages award. Id.

20. On November 28, 2006, the Hon. Jan R. Jurden of the Superior Court of Delaware, New Castle County, entered an Opinion denying NHA's and PAG's Motion for New Trial or Remittitur and PAG's Motion for Judgment as a Matter of Law. Id.

21. In its Opinion deciding the post-trial motions, the Delaware court specifically cited the trial testimony of PAG representative Susan Rimel ("Rimel"). Id., pp. 11-14.

22. Rimel testified as follows at trial:

> If somebody called and told us the closer was completely broke off and the door was slamming, I would send somebody over there, but if they called and say it's hanging open – the biggest problem in the hallways of Lexington Green is vandalism. They are always breaking the closers off because they don't want the doors shut, "they" being the people hanging in the hallways that are

> independent pharmacists, I guess is the word. They like to sell their own brands, and children doing vandalism, they're always breaking the door closers, the glass. We changed from glass to plexiglass because there was so much of the glass broken out of the doors, and the handles, and that's because they tied the door open . . .
>
> Those – those slide plates were broke within three months of being put on. None of them worked. The residents broke them. They don't want them there, because when the police are chasing them, they go straight through the buildings . . .

Id., p. 12.

23. Judge Jurden characterized Rimel's testimony as "the proverbial 'icing on the cake.'" Id., p. 13.

24. NHA and PAG are appealing the trial court's denial of their post-trial motions to the Supreme Court of Delaware, and have "demand[ed] that [American Guarantee] contribute funds necessary to secure any Supersedeas Bond required to secure a stay of execution pending appeal." See December 8, 2006 letter from James S. Green, Esq. of Seitz, Van Ogtrop & Green, P.A. to Adam M. Smith, Esq., attached as Exhibit D to the Smith Cert.

25. American Guarantee issued commercial umbrella policy no. AUC 3634609-01 to Residential Resource Associates, Inc. (A Risk Purchasing Group) for the period December 1, 2001 to December 1, 2004 (the "American Guarantee Excess Policy"). See American Guarantee Excess Policy, annexed as Exhibit E to the Smith Cert.

26. Certificate of Insurance No. 2415ZU, evidencing that the American Guarantee Excess Policy provided the enumerated coverage to the named insured AHG, as a

member of the risk purchasing group, was issued for the period January 1, 2003 to January 1, 2004. Id.

27. An endorsement to the American Guarantee Excess Policy effective November 20, 2003, named NHP as an additional insured under the American Guarantee Excess Policy. Id.

28. The American Guarantee Excess Policy attaches after the exhaustion of the $1 million limits of the Clarendon Primary Policy. Id., Schedule of Underlying Insurance (ISO Form U-UMB-105-A CW (7/99)).

29. The following relevant language regarding American Guarantee's duty to defend is contained in the American Guarantee Excess Policy:

**SECTION III. DEFENSE AND SUPPLEMENTARY PAYMENTS**

**A.** We have the right and duty to assume control of the investigation, settlement or defense of any claim or suit against the insured for damages covered by this policy:

**1.** Under Coverage A [Excess Follow Form Liability Insurance], **when the applicable limit of underlying insurance has been exhausted by payment of claims.**

***

**B.** In those circumstances where paragraph **A.** above applies, in addition to the applicable Limits of Insurance, we will pay our expenses and the following to the extent that they are not included in underlying insurance:

***

**2. The cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. We do not have to furnish these bonds.**

***

> C. **In those circumstances where paragraph A. above does not apply, we do not have the duty to assume control of the investigation, settlement or defense of any claim or suit against the insured.** We do, however, have the right to participate in the investigation, settlement or defense of any claim or suit that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

Id., Commercial Umbrella Liability Policy (ISO Form U-UMB-100A CW (7/99)), Section III (emphasis added).

30. The Clarendon Primary Policy's Insuring Agreement applicable to "bodily injury" liability under Coverage A provides that Clarendon "will have the right and duty to defend the insured against any 'suit' seeking" damages for bodily injury, and also states the following in regard to when Clarendon's duty to defend ends:

> Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

See Smith Cert. at Exhibit C, Commercial General Liability Coverage Form (ISO Form CG 00 01 07 98), Section I(1)(a)(2).

COUGHLIN DUFFY LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: */s/ Adam M. Smith*
Adam M. Smith

PEABODY & ARNOLD, LLP
Attorneys for Plaintiff,
American Guarantee & Liability
Insurance Company
By: */s/ Frederick E. Connelly, Jr.*
Frederick E. Connelly, Jr.