UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

AMERICAN GUARANTEE and LIABILITY INSURANCE COMPANY, :

v. : C.A. NO. 06-297

ALTERNATIVE HOUSING GROUP, NARRAGANSETT HOUSING PARTNERS, L.P., NARRAGANSETT HOUSING ASSOCIATES, L.P and PROPERTY ADVISORY GROUP, INC. :

**DEFENDANT PROPERTY ADVISORY GROUP, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

NOW COMES Defendant Property Advisory Group ("PAG") and hereby requests that this court dismiss, or in the alternative, stay the instant proceedings pursuant to F.R.C.P. 12(b)(7) and 19. In support of said motion, PAG further relies on the attached Memorandum of Law and exhibits thereto.

WHEREFORE, PAG requests that this court order an immediate dismissal or stay of the within action.

Property Advisory Group, Inc.
By their Attorney,

/s/Max Wistow
Max Wistow (#0330)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
mw@wistbar.com

## CERTIFICATION

I hereby certify that I caused to be served by electronic means (ECF) a copy of the within on the 13th day of April, 2007 to the following:

Frederick E. Connelly, Jr.
fconnelly@peabodyarnold.com

Adam M. Smith, Esq.
Kevin T. Coughlin, Esq.
asmith@coughlinduffy.com
kcoughlin@coughlinduffy.com

Kevin G. Mahoney, Esq.
Mahoney@mmwlaw.com

James T. McCormick, Esq.
mclaw@choiceonemail.com

/s/Max Wistow

Max Wistow (#0330)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
mw@wistbar.com

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN GUARANTEE and LIABILITY INSURANCE COMPANY, | : | |
| v. | : | C.A. NO. 06-297 |
| ALTERNATIVE HOUSING GROUP, NARRAGANSETT HOUSING PARTNERS, L.P., NARRAGANSETT HOUSING ASSOCIATES, L.P and PROPERTY ADVISORY GROUP, INC. | : | |

**DEFENDANT PROPERTY ADVISORY GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

## I. INTRODUCTION

This case (the "Rhode Island Action") arises from a jury verdict entered on March 23, 2006, in Galindez v. Narragansett Housing Associates, L.P et. al, in the Superior Court of Delaware, New Castle County, (the "Galindez Suit"). In that case, Narragansett Housing Associates, L.P. ("Narragansett"), the owner of a Section 8 low income housing development known as Lexington Green Apartments (the "Property"), and Property Advisory Group ("PAG"), the real estate property manager, were found liable for personal injuries sustained by Miguel Galindez ("Galindez") on November 13, 2003 while he was installing residential cable television at the Property.[1] Galindez was awarded $3,000,000 in compensatory damages against both Narragansett and PAG, jointly and severally, and $10,000,000 in punitive damages solely against PAG.[2]

[1] Galindez was injured when a door on the Property closed on one of his hands severing a portion of one finger and injuring another.

[2] Following this, Narragansett and PAG filed a Motion for New Trial or Remittitur and PAG, alone, filed a Motion for Judgment as a Matter of Law in the Delaware Superior Court – both motions were denied on November 28, 2006. The judgments are now on appeal before the Delaware Supreme Court.

Now, Narragansett's and PAG's excess liability insurance carrier - American Guarantee and Liability Insurance Company ("AGLIC") – seeks a declaration by this court that, inter alia, it "has no duty to indemnify" Narragansett, PAG, or Alternative Housing Group ("AHG"),[3] in connection with the Galindez Suit, and that it does not have an obligation to "settle or satisfy any amount or judgment" that any entity "becomes obligated to pay as a result of" the Galindez Suit. See Plaintiff's Complaint for Declaratory Relief. Nevertheless, AGLIC has not and, indeed, cannot join Galindez - an indispensable party under F.R.C.P. 19 - to the case at bar (see discussion, infra), thus, complete relief cannot be afforded to all concerned parties. On the other hand, a recently filed Delaware case (the "Pending Delaware Action") provides for complete adjudication as to all of these issues and all of the concerned parties - including Galindez. (Exhibit A – Selections[4] from the Delaware Complaint).

In Aetna Casualty & Surety Co. v. Kelly, 889 F.Supp. 535, 539-40 (D.R.I. 1995), this court considered a similar, yet distinguishable, set of facts. There, the court was asked to stay a declaratory action concerning various insurance coverage issues because of pending related federal and state tort suits. Although the court allowed certain coverage issues to be exempted from its stay it was not suggested that the action should be dismissed or stayed because of the failure to join an indispensable

[3] Alternative Housing Group is a named insured on the AGLIC excess policy as well as on an underlying policy issued by Clarendon National Insurance Company which provides primary coverage in connection with the Galindez Suit. See discussion, infra at 4-5.

[4] Because of this court's administrative order limiting the number of exhibit pages to ten (10), PAG only attaches the most pertinent parts of the twenty (20) page Delaware Complaint.

party under F.R.C.P. 19.[5] (See discussion infra). This additional critical factor mandates the dismissal of the entire Rhode Island Action. As to the issues that were stayed, the court reasoned that concerns for judicial economy, as well as the avoidance of multiple, inconsistent adjudications warranted a stay. In the court's words:

> when a parallel state action is pending, one important consideration is "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding. Wilton, 515 U.S. at ---, 115 S.Ct. at 2141 (quoting Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176). In addition, the court has recognized that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 495, 62 S.Ct. at 1175-76; Fuller, 782 F.2d at 310 (quoting Brillhart).
>
> When all parties have a fair opportunity to litigate their claims in the state court action, the initial inquiry in determining whether the federal declaratory judgment action should be stayed is whether answering the declaratory judgment questions requires resolution of factual issues presented in the state court case . . . . [I]f the declaratory judgment action presents the same factual issues that are the subject of the state court case, a stay may be appropriate. This principle is equally applicable to declaratory judgment actions involving insurance coverage. When the coverage questions turn on factual issues raised in the underlying tort litigation, a stay, generally, should be granted in order to avoid duplicative proceedings, to preserve the insured's prerogative to select the forum and to avoid the risk of inconsistent judgments. Metropolitan Property and Liability Ins. Co. v. Kirkwood, 729 F.2d 61, 62-63 (1st Cir.1984). (Emphasis added).

All of these policy concerns apply to the instant matter, a fortiori. As will be discussed, infra, all of the issues at stake herein will be litigated in the Pending Delaware Action; nothing but potentially inconsistent judgments will result if the Rhode

[5] This is a critical distinction. In the case at bar, since Galindez is not, and cannot be joined as a party, an adverse coverage determination might have res judicata effect on him in Delaware. Nevertheless, as discussed, infra, this court cannot decide whether he will be bound – the Delaware court will decide this. In Aetna, by contrast, none of the interested parties had this concern since everyone was subject to jurisdiction in Rhode Island and they all litigated in the federal declaratory judgment action.

Island Action proceeds without Galindez; and this court cannot determine the res judicata effect of its adjudication on Galindez in Delaware. Moreover, considering the fact that the Galindez Suit is on appeal before the Delaware Supreme Court - which could very well order a new trial, thus rendering AGLIC's prejudicial late notice claim[6] moot - a dismissal or stay makes complete sense.

## II. FACTS/TRAVEL

On or about January 1, 2003 Narragansett and PAG entered into a management agreement with PAG serving as Narragansett's real estate manager for the Property. (Exhibit B – Selections[7] from the January 1, 2003 Delaware State Housing Authority Management Agreement). With respect to the Property, from September 17, 2003 to January 1, 2004, Narragansett was a named insured, along with Alternative Housing Group ("AHG"), Residential Resource Associates, Inc. - a so-called "Risk Purchasing Group" ("Residential Resource") and the Delaware State Housing Authority under a $1,000,000 liability insurance policy issued by Clarendon National Insurance Company, ("Clarendon"). (See the Clarendon Policy attached as Exhibit C to the Certification of Adam M. Smith, Esq. in Support of Plaintiff's Motion for Partial Summary Judgment of March 30, 2007). The Clarendon Policy, which defines "insured" as "any . . . organization while acting as your[8] real estate manager", (see Clarendon Policy, supra, at § II, 2(b); and see Management Agreement, supra), similarly covered PAG.

[6] The only basis for AGLIC's denial of coverage. (See Exhibit G attached to the Affidavit of Frederick E. Connolly of September 15, 2006).
[7] Again, because of the page limits order, only the relevant portions of the thirteen (13) page Management Agreement are attached hereto.
[8] The Clarendon Policy defines "Your" as referring to "the Named Insured shown in the Declarations, and any other . . . organization qualifying as a Named Insured under this policy." The Clarendon declarations page defines "Named Insured" as "Residential Resource Associates, Inc. (A risk purchasing group) and those individual member participants as indicated on certificates of insurance attached to this policy [and]

These parties were also covered under a $50,000,000 AGLIC excess policy (the "AGLIC Policy") which defines an insured, therein, as "any . . . organization included as an insured in the underlying insurance" – i.e. the Clarendon Policy. (See the AGLIC Policy attached as Exhibit E to the Smith Certification, supra, at § V(B)(1)(b)). Both policies were obtained through Breed's Hill Insurance Agency, Inc. ("Breed's Hill").

The day after the Galindez jury verdict Narragansett's and PAG's defense counsel, Sean Dolan, Esq., ("Dolan"), for the very first time, advised both that if they had excess insurance they should immediately notify these excess carriers of the jury verdict.[9] Following the verdict, AGLIC, by correspondence dated June 26, 2006, disclaimed coverage for those portions of the same attributable to Narragansett and PAG in excess of the Clarendon Policy. The following day, in an obvious race to be the first to file, AGLIC filed the Rhode Island Action.[10]

On March 26, 2007 the Pending Delaware Action was filed seeking monetary damages and declaratory relief. Narragansett and PAG aver, inter alia, that AGLIC breached its covenant of good faith and fair dealing with them by denying coverage.

---

Alternative Housing Group." The policy includes the appropriate certificate of insurance. (See Clarendon Policy declarations page). (Emphasis added).

[9] PAG and Narragansett are claiming in this case, and in the Pending Delaware Action, that such notice was given to AGLIC at the very commencement of the Galindez Suit by sending the Complaint to Breed's Hill, who was the actual or apparent agent of AGLIC. Breed's Hill is also a defendant in the Pending Delaware Action, although not a party to the Rhode Island Action.

[10] AGLIC filed its declaratory action in Rhode Island, undoubtedly hoping to obtain a favorable ruling concerning the insurability of the punitive damages award since Delaware expressly allows for the same (see Whalen v. On-Deck, 514 A.2d 1072 (Del.1986)) - Rhode Island's only real connection to this litigation stems from the citizenship of Narragansett and PAG, which are both Rhode Island business entities. In its recently filed Motion for Partial Summary Judgment citing, inter alia to Allen v. Simmons, 533 A.2d 541 (R.I. 1987), AGLIC avers that

> punitive damages are not insurable in the State of Rhode Island [and, hence,] Rhode Island law is clear that the punitive damages award against PAG is not a liability that can be shifted to [AGLIC] under the [AGLIC Policy], assuming that [AGLIC] even has any coverage obligation to PAG.

PAG vehemently disputes the applicability of Allen to the facts of this case (see discussion, infra at 16-18, n.19).

Moreover, Narragansett, PAG and Galindez seek a declaration that AGLIC must satisfy the judgments in excess of the $1,000,000 available for payment under the Clarendon Policy.[11] Narragansett and PAG also assert claims of misrepresentation and negligence against Breed's Hill, AGLIC's alleged actual or apparent agent, in connection with the late notice issue. (Exhibit A).

III. ARGUMENT

(A) THE INSTANT ACTION MUST BE DISMISSED, OR STAYED, BECAUSE GALINDEZ, WHO IS AN INDISPENSIBLE PARTY, HAS NOT BEEN JOINED AND, THEREFORE, ANY DECLARATION OF HIS RIGHTS BY THIS COURT WILL BE HOLLOW, MEANINGLESS OR PREJUDICIAL

(i) This Court Possesses the Discretionary Authority under F.R.C.P. 12(b)(7) and19(b) to Dismiss the Rhode Island Action

AGLIC has failed to name Galindez as a party to the Rhode Island Action – in fact, Galindez cannot be joined because he has no specific or general contacts with the forum and, as such, personal jurisdiction over him is lacking.[12] Negron -Torres v. Verizon Communications, Inc., 478 F.3d 19 (1st Cir. 2007). If the Rhode Island Action continues in his absence and, assuming further, that a judgment is rendered defeating coverage, either in whole or in part, under the AGLIC Policy, the potential for prejudice to him - as a judgment creditor - as well as to the other parties, is quite real.

[11] Most of the other counts contained in the Delaware Complaint, with the exception of those already mentioned and the counts against Breed's Hill, (see discussion, infra), are not immediately relevant to this motion. They concern claims against Dolan and his law firm, Marshall, Dennehey, Warner, Coleman & Goggin ("MDW") for legal malpractice and breaches of fiduciary obligations; negligence, breaches of fiduciary obligations and breaches of covenants of good faith and fair dealing against North American Risk Services, Inc. ("NARS"), the third-party claims administrator for Clarendon vis a vis the Galindez Suit, and Clarendon; and negligence against Residential Resource - all arising from the events leading up to and including AGLIC's declination of coverage.

[12] Galindez is, concededly, a Delaware resident. Further, he is not subject to jurisdiction in this court. (See Exhibit A at ¶ 1). If he were subject to jurisdiction, failure to join him as a party to this action would be fatal under F.R.C.P. 19(a) (see, infra, at 7).

This court, however, has the discretionary power to avoid this unnecessarily harsh outcome. Specifically, F.R.C.P. 12(b)(7) and 19(b), empower this court to dismiss the Rhode Island Action entirely when proceeding without an indispensable party - in this case, Galindez - would result in prejudice to the absentee and/or the joined parties. Travelers Indemnity Co., v. Dingwell, 884 F.2d 629 (1st Cir. 1989).

a. F.R.C.P. 19 Indispensability Determination[13]

Federal Rule of Civil Procedure 19(a) controls as to which parties must be joined to an action, if feasible, and, if not feasible, sub-section (b) sets forth the considerations that must be weighed in deciding whether or not to proceed without the absentee. Specifically, sub-section (a) provides as follows:

> (a) Persons to be Joined if Feasible.
>
> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

To the extent that a person cannot be so joined – and Galindez cannot be - then sub-section (b) requires the court to conduct a four pronged equitable inquiry to determine whether or not the instant proceeding can proceed without the absentee. Specifically, this balancing is to be conducted as follows:

> (b) Determination by Court Whenever Joinder Not Feasible.

[13] PAG's and Narragansett's Answers to AGLIC's Complaint both plead failure to join an indispensable party as affirmative defenses. Rule 12(b)(7) allows the option of asserting failure to join a party under Rule 19 by motion and/or responsive pleading.

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The First Circuit, in Travelers Indemnity Co., 884 F.2d at 635, commenting on sub-section (b)'s indispensability determination, observed that such determinations

> must be based on fact specific considerations. These determinations are anything but pure legal conclusions. They are not based on the 'technical or abstract character of the rights and obligations of the persons whose joinder [is] in question . . . .' Instead they involve the balancing of competing interests and must be steeped in pragmatic considerations . . . [yet] will not be reversed unless they amount to an abuse of discretion."

Tort claimants - especially judgment creditors like Galindez - are virtually always considered indispensable parties to declaratory proceedings which might adjudicate their rights of recovery under a tortfeasor's insurance policy.[14] In Indemnity Ins. Co. of

[14] Even those cases which hold the opposite do so only because the injured claimant is not a judgment creditor. For example, in Black Diamond Girl Scout Council, Inc. v. St. Paul Fire and Marine Ins. Co., 621 F.Supp. 96, 98 (S.D.W.V. 1985), the U.S. District Court for the Southern District of West Virginia reasoned that tort claimant was not indispensable to an insured tortfeasor's declaratory judgment coverage action against its insurer because

> the [injured claimant] has no judgment with which to bring any action against [the insurer] . . . nor do the [torfeasor insured's] co-defendants have any present right to proceed against [the insurer]. Nor is there any way at this time to determine if [the injured claimant] obtains a judgment against one or more of the co-defendants in the state court action whether any or part of the liability would be assessed against the [insured tortfeasor] . . . .

Therefore, the potential prejudice to the absentee tort claimant was merely "hypothetical" since no "protectible interest as required buy Rule 19" was at stake. Id. Galindez, on the other hand, is a judgment creditor with substantial verdicts against both Narragansett and PAG. But see Global Indemn. Co., v. Bachrodt Chevrolet, Inc., 1992 WL 390786, No. 92C20269 (N.D.Ill. 1992) (expressly rejecting the reasoning of Black Diamond, supra, holding that an injured party is a necessary party to an insurance coverage declaratory judgment action because there is

> an actual controversy . . . between an injured third party-not a party to the contract of insurance-and a plaintiff insurer, and [,therefore,] it would be anomalous to hold that an actual controversy existed yet deny the injured party the right to participate in the controversy.).

North America v. Kellas, 173 F.2d 120 (1st Cir. 1949), for instance, the First Circuit Court of Appeals first observed that tort claimants are ordinarily joined as parties in such proceedings as "necessary and proper [parties] in order that the court may be enabled give more complete relief." As the court explained,

> It is obviously desirable that the tort-claimant should be concluded by the declaration of non-coverage; otherwise he would be free to litigate the same issue in a subsequent proceeding which he, if successful in obtaining judgment against the insured, might bring against the insurance company.

Id. at 124-5. Subsequent First Circuit federal court decisions have explicitly held that such parties are, in fact, indispensable. For example, in Nat'l Union Fire Ins. Co. of Pittsburgh v. Massachusetts Municipal Wholesale Electric Co., 117 F.R.D. 321 (D. Mass. 1987) the United States District Court for the district of Massachusetts held that an injured tort claimant was critical to the effective adjudication of an insurance carrier's declaratory judgment action seeking to have an insurance contract rescinded. The court reasoned that

> [t]he failure to join [the injured tort claimant] as a party to the action can render the judgment of this court hollow or ineffectual. Although this court could issue a declaratory judgment declaring the insurance policy at issue to be null, void and of no effect ab initio, this ruling would not be binding on [the injured tort claimant company] if it were not a party to this proceeding . . . . A declaratory judgment would be of little use to [the insurer] if [the injured claimant] could relitigate [the issue of coverage] in a state proceeding. Consequently, complete relief cannot be accorded to [the insurer] if [the injured claimant] is not a party to the action; [the latter] is therefore a necessary party . . . . Id. at 322-3. (Emphasis added).

See also Travelers Indemnity, 884 F.2d at 629 (claimants, who entered into a settlement agreement with an insured whereby the latter transferred to the former its indemnity claims against the insurer, were indispensable parties to the insurer's

declaratory judgment action seeking a determination of its (the insurer's) obligations to the insured under the terms of the insurance policy).

PAG respectfully suggests that while Rule19(b) determinations are matters of discretion, the thrust of the cases involving failure to join the injured party (much less one who is a judgment creditor) in a declaratory judgment action between the insured and the insurer show that the refusal to dismiss a case like this under Rule 19(b) would be an abuse of discretion. A number of other federal and state courts, in addition to well-respected legal treatises, concur. See American Safety Casualty Ins. Co., v. Condor Assoc., 129 Fed. Appx. 540 (11th Cir. 2005) (absent tort claimants were held to be indispensable parties to a liability insurer's declaratory judgment action seeking a determination that the insurer had no duty to defend or indemnify its insured in an underlying tort action as the claimants' interests would have been prejudiced if the action proceeded in their absence.); Federal Kemper Ins. Co. v. Griffith, 807 F.2d 345, 354, n.5 (3rd Cir. 1986) (reh'g denied January 14,1987) (injured parties were "indispensable parties" to a declaratory judgment action brought by an insurer against its insured and the injured parties to determine the extent of its (the insurer's) indemnity obligations under the insurance policy.); Ranger Ins. Co., v. United Housing of New Mexico, Inc., 488 F.2d 682 (5th Cir. 1974) (claimants, who brought an underlying tort suit against tortfeasor insureds, were indispensable parties to the insurer's declaratory judgment action seeking to disclaim coverage). See also American Std. Ins. Co. of Wisconsin v. Rogers, 123 F.Supp.2d 461, 467 (S.D.Ind. 2000); General Refractories Co., v. American Mutual Liability Ins. Co., et al., 678 F.Supp 104 (E.D.P.A. 1987); Allstate Ins. Co. v. Conde, 595 So.2d 1005, 1008, n.6 (Fla. App. 1992); Krohn v.

Gardner, 471 N.W.2d 391 (Neb. 1991); Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 514 (Ill. App. 1980); American Home Assurance Co. v. Employers Mutual of Warsaw, 64 A.D.2d 563, 406 N.Y.S.2d 826 (N.Y.App.Div. 1978); St. Paul Fire & Marine Ins. Co. v. Dept. of Natural Resources, 265 N.E.2d 814, 817 (Ohio. 1970); Constant v. Pacific Natl. Ins. Co., 201 A.2d 405 (N.J. Super. 1964). And see Declaratory Judgment Actions and Action Regarding Policy Coverage, 25 Fed. Proc. L.Ed. § 59:141 (2006) ("tort claimants are necessary parties in actions for declaratory judgments construing coverage under a liability insurance policy, given that the tort claimants will be prejudiced by a declaration of non-liability, and the impossibility of shaping a judgment without giving the tort claimants an opportunity to re-litigate the same issue in another proceeding, such as a proceeding to enforce the judgment."); Application of Declaratory Judgment Acts to Questions in Respect of Insurance Policies, 142 A.L.R. 8 (1943).

Particular application of Rule 19(b)'s four prongs to the matter sub judice further reinforces this.

i. Prong 1 – the extent to which a judgment rendered in Galindez' absence might be prejudicial to him or those already parties to the declaratory action.

The court must consider whether any such decision could have res judicata effect on Galindez' attempt to litigate coverage in the Pending Delaware Action. On the other hand, if it is not res judicata, will the adverse adjudication have any other prejudicial effect on any of the parties to the Rhode Island Action? And if Galindez is not so barred, then of what value is the Rhode Island Action and why must the defendants expend the time and money to defend it? The fact is that regardless of whether or not an adjudication by this court has a binding effect on the absent Galindez,

prejudice to someone will result and the decision will, ultimately, be hollow and meaningless.

Several federal cases have discussed the res judicata effect of a federal declaratory judgment concerning insurance coverage on a non-party tort claimant, suggesting that the absentee would not be bound and, thus, would be free to re-litigate the coverage issue in a separate proceeding. In Nat'l Union Fire Ins. Co. of Pittsburgh, 117 F.R.D. at 322, for instance, the United States District Court for the District of Massachusetts held that "although this court could issue a declaratory judgment declaring the insurance policy at issue to be null, void, and of no effect ab initio, this ruling would not be binding on [the injured tort claimant corporation] if it were not a party to this proceeding."; See also generally Federal Kemper, 807 F.2d at 354; and see Ranger, 488 F.2d at 683 (holding that a declaratory judgment in favor of an insurer seeking to disclaim coverage "probably would not operate to bar the absent [tort] claimants from proceeding under the policy's direct action clause [in order to reach the insurance proceeds]."). This is true, notwithstanding the insured tortfeasor's presence and participation in the action and possible identity of interest with the absentee claimant in seeing that the disputed coverage is given full effect. See generally Nat'l Union Fire Ins. Co. of Pittsburgh; Federal Kemper; and Ranger, supra.

This is an a fortiori case. Galindez' and Narragansett's/PAG's interests, vis a vis coverage, are not truly comparable. Consider - the most that PAG and Narragansett will have to pay out (to Galindez), in the event that coverage is defeated, will be their respective net worths, which, at least in PAG's case is substantially less[15] than the

[15] In fact, PAG's current net worth is only $412,361. (Exhibit C – Affidavit of Gretchen E. Maurer, Treasurer of Property Advisory Group, Inc.).

$12,000,000 in excess of the Clarendon Policy.[16] By contrast, Galindez stands to lose at least $9.5 million. Thus, Galindez has far more incentive to fight for coverage than does PAG or Narragansett. See St. Paul Fire & Marine, 265 N.E.2d at 817 (observing that

> the vigor with which an insured opposes an insurer's attempt to limit or nullify its coverage – and often the success of the opposition – is directly proportional to his financial worth. The more he owns, the more he fights. To make an injured person's financial fate hang on a balance sheet is repugnant to the ideal of justice).

Other federal court decisions, by contrast, suggest that it is unclear whether a tort claimant not joined to an insurer's declaratory proceeding will be precluded from re-litigating coverage in a subsequent action. For example, in American Std. Ins. Co., 123 F.Supp.2d at 467 the United States District Court for the Southern District of Indiana held that the effect of an adjudication concerning coverage on an absent tort claimant's ability to re-litigate the issue "is not certain" as the "Indiana Supreme Court has not ruled on the issue . . . ."[17] The court speculated that

> It is not inconceivable that an Indiana court would give effect to a default judgment against [the insured] by refusing to hold [the insurer] liable to pay any judgment obtained by [the injured tort-claimant] against [the insured tortfeasor]; thus a judgment in [the declaratory action] could as a practical matter affect [the injured tort-claimant's] ability to protect his interest in the insurance policy proceeds . . . .

Id.

In either event - res judicata or no res judicata - undesirable consequences will follow.

---

[16] The Galindez jury awarded $3,000,000 in compensatory damages and $10,000,000 in punitive damages – only $1,000,000 of the compensatory award was covered by the Clarendon Policy. Even if Narragansett has a net worth sufficient to cover the balance of $3,000,000 in compensatory damages, Galindez still has a shortfall of over $9,500,000.

[17] As noted, one of the problems with the instant case is that Delaware courts will ultimately decide the res judicata effect, vel non, (as to Galindez) of any determination made by this court.

As to the parties that are already joined in the Rhode Island Action, going forward in Galindez' absence is a complete waste of time, effort and money if an adjudication does not bar his re-litigation of coverage. As the Nat'l Union Fire Ins. Co. of Pittsburgh court held, the effect of going forward under such circumstances "can render the judgment of [the adjudicating court] hollow or ineffectual." Id. at 322. (Emphasis added). See also Dainippon Screen Mfg. Co. Ltd. v. CFMT, Inc., 142 F.3d 1266, 1273 (Fed.Cir. 1998) (proceeding with a declaratory judgment proceeding in an indispensable party's absence would make "the case 'essentially hollow' if it were to proceed [in said party's] absence.'"). (Citations omitted). Valuable judicial resources would also be wasted.

Ultimately, if this action goes forward, no matter what the decision is, any such adjudication will be "reviewed" by the Delaware court. Stated another way, this court cannot be the final arbiter of whether or not its decision is res judicata as to Galindez in Delaware - the Delaware court will decide this.

ii. Prong 2 – the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided

In Ranger, supra, the Fifth Circuit had to consider whether or not to dismiss an insurer's federal declaratory judgment action seeking to disclaim coverage, even though the tort claimant could not be joined without destroying diversity jurisdiction (precluding dismissal pursuant to Rule 19(a)). In applying the second 19(b) prong, the court pointed out a fundamental problem with going forward, even assuming, upon remand to the district court, that prejudice could somehow be lessened. As the court posited:

> Conceivably the district court could shape relief to avoid seriously prejudicing the absent claimants, possibly by enjoining [the insurer] from

> raising its judgment of noncoverage as a defense to a direct action. However, at this point the basic difficulty with [the insurer's] case becomes apparent - either a judgment might prejudice the claimants, violating the first Rule 19(b) factor, or it would not be adequate to finally resolve the issue, violating the third Rule 19(b) factor. Neither alternative is acceptable.

Id. at 684. (Emphasis added). This is the essential and inescapable problem with the case at bar.

iii. Prong 3 – whether a judgment rendered in Galindez' absence will be adequate

The only thing that will be certain if this case goes forward is the potential for countless inconsistent adjudications. Consider some of the possible outcomes:

Possible Inconsistent Adjudication #1. Assume that this court finds that the AGLIC policy insured PAG for punitive damages in connection with the Galindez Suit and that punitive damages are insurable. Nevertheless, the court determines that, in fact, PAG is not entitled to such coverage because of late notice prejudicial to AGLIC. AGLIC will, of course, raise res judicata as a defense to Galindez' attempts to litigate the issue in the Pending Delaware Action. Assume that the Delaware court determines that he is not so barred. It is entirely possible that the Delaware court could find that there was no late notice by PAG, or if there was it was not prejudicial to AGLIC.[18]

Possible Inconsistent Adjudication #2. Assume that this court finds that PAG was covered for compensatory damages by the AGLIC Policy, but not for punitive damages and that such compensatory coverage is not defeated because there was no late notice. Once again, though, assume that Galindez is able to re-litigate the

[18] The Delaware court will use its own conflict of laws rules to determine which law governs the issues of this case. This court may decide to use the Rhode Island conflict rules. The opportunity for inconsistent results, therefore, is great.

coverage issues in the Pending Delaware Action and the Delaware court finds that not only is PAG entitled to coverage for compensatory damages, but punitives as well.

Possible Inconsistent Adjudication #3. Assume that this court finds that PAG was covered for both compensatory and punitive damages but that PAG's defense counsel, Dolan, knew, prior to the jury verdict, of facts that would be sufficient to trigger the notice requirement. Assume further that such knowledge was imputed to PAG, as Dolan's principal, and that AGLIC was prejudiced because it did not receive timely notice of these facts. In the Pending Delaware Action, PAG claims that Dolan and MDW are liable for legal malpractice in Delaware if this eventuality should occur. Conversely, Dolan and MDW would claim that, as non-parties to the Rhode Island Action, they are not bound by any Rhode Island adjudication of prejudicial late notice. The Delaware court will allow Dolan and MDW to litigate the notice issue and an entirely different adjudication might result.

Possible Inconsistent Adjudication #4. There could also be legally, as opposed to factually, inconsistent adjudications. Consider if this court, in deciding which jurisdiction's internal law to apply in determining the enforceability of the AGLIC Policy, chooses the substantive law of Rhode Island. Assume that Rhode Island law says that all such determinations are made on the basis of lex loci contractus – the place where the contract was made. Assume further that, using this approach, the court finds that said policy was made in Rhode Island, and that punitive damages are not insurable under Rhode Island law.[19] The court in the Pending Delaware Action, by contrast, might

[19] By no means is this a concession by PAG that the AGLIC policy was made in Rhode Island or that Rhode Island would not enforce that portion of the policy which insures against punitive damages. Rather, this hypothetical example is meant to illustrate the myriad inconsistent adjudications that might result if this action proceeds. Consider the depth of the problem:

I. Initial Considerations
To proceed, this court must first resolve two critical issues – (1) which choice of law approach to apply – Rhode Island's lex loci contractus approach or the interest weighing approach of Woodward v. Stewart, 104 R.I. 290, 243 A .2d 917 (1968) (see Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1 (D.R.I. 1994) (observing that federal district courts sitting in Rhode Island have applied both the lex loci contractus and interest weighing approaches in deciding which state's law to apply to a contract dispute); and (2) the place where the AGLIC Policy was made, since, under lex loci contractus, this determination might well control which state's substantive law governs the enforceability of the insurance contract. In this case, the AGLIC Policy may have been entered into in one of four states – Rhode Island, where Narragansett and PAG are organized; Delaware, where the principal risk was insured against and from where the premiums were paid; Illinois – where the policy was countersigned; or Massachusetts from where the endorsement adding Narragansett, and thus PAG, issued.

II. Application of Lex Loci Contractus
If the court applies lex loci contractus, any of the aforementioned states could be the place where the insurance contract was entered into. Assume that it is Rhode Island:

(a) Rhode Island as the Place of Contracting and the Insurability of Punitive Damages. Deciding the insurability of punitive damages in this case would be a matter of first impression since the facts of Allen v. Simmons, supra, which holds that punitive damages are not insurable, are completely distinguishable from those of the case at bar. Specifically, Allen concerned only Rhode Island parties; a Rhode Island tort; a Rhode Island tort suit; and, a Rhode Island insurance company - Amica - which insured the tortfeasor and the injured party. The instant matter, by contrast, involves a Delaware tort; a Delaware judgment creditor; a Delaware insured property; Delaware litigation; and a New York insurer (AGLIC) – only Narragansett and PAG have ties to Rhode Island. The critical distinguishing factor, however, is that the tortfeasor in Allen was an individual who acted alone, while PAG, a corporation, was found liable for the fault of its agent. Many states, including Illinois (from where the general policy issued), allow corporations to insure against the wanton or willful conduct of its agents (see Scott v. Instant Parking, Inc., 245 N.E.2d 124 (Ill.App. 1969)). Rhode Island has never decided this precise issue and might very well align with courts like Scott. This is especially likely considering that the standards for awarding punitive damages in Rhode Island and Delaware are very different (for instance, Rhode Island requires proof of conduct rising to the level of criminality, (Bourque v. Stop & Shop Cos., Inc., 814 A.2d 320 (R.I. 2003)), while Delaware only requires proof of wanton or reckless conduct, (Estate of Rae v. Murphy, 2006 WL 1067277, No. 05C-01-087 WCC (Del.Super. 2006)), and in Delaware punitive damages, in any context, are clearly insurable, (Whalen, supra at 5, n.10) and PAG's alleged wrongdoing occurred solely in Delaware. Nevertheless, given the dearth of any Rhode Island precedent on-point, the result is uncertain.

(b) Massachusetts, Delaware and/or Illinois as the Place(s) of Contracting: Similarly, if this court applies the law of Massachusetts to determine insurability of punitive damages, since the SJC has never addressed the issue in this context one way or the other (Punitive Damages: A State-By-State Guide to Law and Practice, § 7:48 (2006 e.d)), this court would be sailing into uncharted waters. Delaware and Illinois (Warren v. LeMay, 494 N.E.2d 206 (Ill.App. 1986)) affirmatively allow business entities to insure against punitive damages.

III. Application of Depecage – Issue-by-Issue Approach: Consider also that this court might apply the principle of depecage in its choice of law analysis, deciding which state's law to apply on an issue by issue basis. LaPlante v. American Honda Motor Co., Inc., 27 F.3d 731, 741 (1st Cir. 1994). For example, the court could analyze the insurability of punitive damages under Delaware internal law while at the same time applying Rhode Island law to determine PAG's status as an insured under the AGLIC Contract.

apply a completely different standard – for instance, the "most significant relationship" test[20] - which balances a number of factors including

> (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

If, under the latter approach, the Delaware court finds that most of the contacts center on Delaware, and applies Delaware law, which allows for the insurability of punitive damages, then truly inconsistent adjudications have resulted. See Whalen, supra at 5, n.10.

Other permutations are virtually endless.

iv. Prong 4 – whether AGLIC will have an adequate remedy if the Rhode Island Action is dismissed for nonjoinder

AGLIC will have an adequate remedy if the Rhode Island Action is dismissed, or even stayed, since the Pending Delaware Action involves the very same issues, as discussed at length, supra, and all parties that have a stake in seeing the same fully, and finally litigated are parties thereto. The Delaware Superior Court (and, if necessary, the Delaware Supreme Court) can, and undoubtedly will, finally adjudicate all the coverage issues such that no parties are left out; no parties rights are prejudiced; and no inconsistent adjudications have occurred.

---

IV. Application of *Woodward* Approach: As mentioned, this court could apply the Woodward interest weighing approach resulting in the application of Delaware law to all issues, including the insurability of punitive damages.

V. This Court's Adjudication will be Second Guessed in Any Event: No matter what this court's adjudication is, it is certain to be second guessed by the Delaware court, (see discussion, supra), which, after all is said and done, might apply an entirely different analysis, and reach an entirely different result, if AGLIC seeks to apply res judicata to Galindez.

[20] See Shook & Fletcher Asbestos Settlement Trust v. Safety Nat'l Cas. Corp., 2005 WL 2436193, No. 04C-02-087MMJ, at * 3 (Del.Super. 2005).

In light of all of this, and the fact that everything connected with this dispute – Galindez' injury, the Galindez Suit, the events giving rise to AGLIC's coverage denial – all occurred in Delaware, in reality, there can be no better and more adequate forum than Delaware.

IV. CONCLUSION

One thing is absolutely certain - continuing with the Rhode Island Action, given Galindez' indispensability, the availability of the Pending Delaware Action, and this court's inability to determine whether or not he will be bound later by an adverse adjudication here will prejudice him and the parties to said litigation and waste judicial resources. See Travelers, supra.

For all of the forgoing reasons, this court should dismiss the Rhode Island Action or, in the alternative, stay these proceedings pending the outcome of the Pending Delaware Action which will fully and finally resolve all of the issues at stake herein as to all interested parties.

Property Advisory Group, Inc.
By their Attorney,

/s/Max Wistow

Max Wistow (#0330)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
mw@wistbar.com

## CERTIFICATION

I hereby certify that I caused to be served by electronic means (ECF) a copy of the within on the 13th day of April, 2007 to the following:

Frederick E. Connelly, Jr.
fconnelly@peabodyarnold.com

Adam M. Smith, Esq.
Kevin T. Coughlin, Esq.
asmith@coughlinduffy.com
kcoughlin@coughlinduffy.com

Kevin G. Mahoney, Esq.
Mahoney@mmwlaw.com

James T. McCormick, Esq.
mclaw@choiceonemail.com

/s/Max Wistow
Max Wistow (#0330)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
mw@wistbar.com