UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN GUARANTEE and LIABILITY INSURANCE COMPANY, | : | |
| v. | : | C.A. NO. 06-297 |
| ALTERNATIVE HOUSING GROUP, ET AL. | : | |

**PAG'S REPLY TO PLAINTIFF'S OPPOSITION MEMORANDUM**

(1) AGLIC fails to address PAG's argument that because Galindez is a judgment creditor he is an indispensable party to this litigation

Because Galindez is a judgment creditor, and not merely a tort claimant, he is an indispensable party to this action - a point which AGLIC does not even address in its opposition memorandum. In fact, the significance of the distinction between a tort claimant and a judgment creditor is expressly recognized by the AGLIC Policy itself. Section VI (A)(8) provides

> Legal Action Against Us
>
> There will be no right of action against us under this insurance unless:
>
> a. You have complied with all the terms of this policy; and
> b. The amount you owe has been determined by settlement with our consent or by actual trial and final judgment.
>
> This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

(See the AGLIC Policy attached as Exhibit E to the Certification of Adam M. Smith, Esq. in Support of Plaintiff's Motion for Partial Summary Judgment of March 30, 2007). (Emphasis added). Thus, as soon as the final judgment was entered for Galindez in the underlying Delaware tort suit, he ceased to be one with a speculative financial interest

in the outcome of this coverage action and, instead, became the holder of a direct right of action against AGLIC. Walden v. Allstate Ins. Co., 913 A.2d 570 (Del. 2006).

(2) Galindez' absence triggers Rule 19(a)(1) and/or (2)(i), and as such, he is a necessary party

AGLIC's Opposition Brief erroneously argues that since Galindez' absence does not trigger any of the Rule 19(a) prongs he is not a necessary party and, as such, this court should not even reach the 19(b) indispensability determination. In fact, Galindez' absence triggers most of the prongs[1] and, because Rule 19(a) is phrased in the disjunctive, it is irrelevant if all prongs are not triggered. Montgomery Scott, Inc. v. Shepard Niles, Inc, 11 F.3d 399, 405 (3rd Cir. 1993) (observing that

> [c]lauses (1) and (2) of Rule 19(a) are phrased in the disjunctive and should be so treated. Thus any party whose absence results in any of the problems identified in either subsections (a)(1) or (a)(2) is a party whose joinder is compulsory if feasible.)

(Emphasis added). (Citations omitted).

For instance, because Galindez is a judgment creditor with a direct right of action against AGLIC in Delaware, (see discussion, supra), complete relief cannot be accorded among AGLIC, Narragansett and/or PAG in his absence – he will still be able to execute on his underlying judgment against AGLIC in Delaware no matter what this court decides (or at least that decision will be up to the Delaware Court.).

As to prong (a)(2)(i), the practical effect of an adverse coverage decision by this court may very well "impair or impede [Galindez'] ability [to protect his interest in the AGLIC Policy proceeds in Delaware ]" since it is impossible to say what its stare decisis

[1]Although it does not appear that prong (a)(2)(ii), which concerns the "risk of double, multiple or other wise inconsistent obligations . . ." is triggered by Galindez' absence, this is irrelevant because of 19(a)'s disjunctive language. See discussion, infra.

effect will be in Delaware. See Ranger Ins. Co. v. United Housing of New Mexico, Inc., 488 F.2d 682 (5th Cir. 1974) (observing that

> [w]hile a judgment in favor of the appellant (insurance company) probably would not operate to bar the absent claimants from proceeding under the policy's direct action clause, we are satisfied that the claimants' interests would be prejudiced. For example, they would have to contend with the stare decisis effect of such a judgment or they might be forced to litigate its effect on the direct action clause.).

(3) Galindez has no control over PAG or Narragansett's defense in this action, therefore, there is no true identity of interest for res judicata purposes

AGLIC incorrectly argues that Galindez is not indispensable under Rule 19(b) because, inter alia,

> there is clearly an Agreement . . . among [Galindez, PAG, Narragansett and AHG] which may establish privity among Galindez, PAG and NHA. Furthermore, the joint and collaborative effort of PAG, NHA and Galindez to seek a declaratory judgment in Delaware reveals that both Galindez and the Defendants have a common interest in the protection of PAG and NHA's insurance coverage.

(AGLIC's Opposition Brief at 14).

First, some identity of interest always exists between an injured tort claimant and a tortfeasor vis a vis ensuring adequate insurance coverage for the former's claim. This does not, however, mean that PAG or Narragansett vicariously represent the absent Galindez in the Rhode Island action. As the First Circuit has unequivocally held, the central inquiry is whether or not the absentee "either participated vicariously in the original litigation by exercising control over a named party or has the opportunity to exert such control . . . ." Gonzalez v. Banco Central Corp., 27 F.3d 751, 758 (1st Cir. 1994). Only under such circumstances is "the non-party effectively [deemed to have enjoyed] his day in court, and it is appropriate to impute to him the legal attributes of a party status for purposes of claim preclusion." Id. As the court explained, "[s]ubstantial

control means what the phrase implies; it connotes the availability of a significant degree of effective control in the . . . defense of the case – [i.e.] the power to call the shots." Id. (Emphasis added).

Galindez has no such power. The Agreement between Galindez, PAG, Narragansett and AHG[2] does not grant Galindez "the power to call the shots" in defending this case. Id. (See Exhibit 1 – March 14, 2007 Agreement between Galindez, PAG, Narragansett and AHG). Moreover, none of Narragansett's or PAG's claims against AGLIC, either in contract or tort, are assigned to Galindez. Exhibit 1 at ¶ 1. As such, there is no privity/identity of interest between Galindez and PAG, Narragansett or AHG vis a vis the instant action.

(4) PAG's Motion to Dismiss was timely filed

The central point underlying PAG's Motion to Dismiss is that the instant action should be dismissed or stayed because all of the issues at stake, and then some, are

[2] AGLIC claims in its Opposition Brief that PAG has failed to disclose this agreement despite the former's request for the same. See AGLIC's Opposition Brief at 3. This is not accurate. On April 13, 2007 PAG timely responded to AGLIC's First Request for Production of Documents and, in particular, No. 23 which requested

> [c]opies of any and all understandings, agreements, contracts, and/or leases in effect between and among Alternative Housing Group, Narragansett Housing Associates, L.P., Narragansett Housing Associates, L.P., and Property Advisory Group, Inc., concerning the Underlying Action.

PAG agreed to produce any such non-privileged documents, inclusive of the Agreement, as follows:

> Defendant PAG will provide documents for inspection as they are kept in the usual course of business pursuant to Rule 34(b) . . . .

Three weeks passed without any request from AGLIC's counsel to examine said documents including, but not limited to the Agreement. It was not until May 4, 2007 that AGLIC's counsel, for the very first time, requested "a copy of all documents referenced in the discovery responses for which a privilege is not asserted. These documents include those bates-stamped number GAL 00001-09301; 20,000-23, 563; 50,000-54483; and 70,000-71,919." (Exhibit 2 – May 4, 2007 letter from Adam M. Smith to Max Wistow). Upon receipt of said request, PAG's counsel inquired of a local bulk copier the cost of making such copies. On May 10, 2007, PAG's counsel wrote to AGLIC's counsel with the approximate per page copy cost and advised, "upon receiving your permission, I will have Alphagraphics made [sic] the copies and bill you accordingly." AGLIC's counsel did not approve the same until May 14, 2007 – over a month after PAG first offered to make the Agreement available.

presently before the Delaware Superior Court – a forum where substantially all of the events connected to this litigation took place and where almost all of the witnesses and parties are located – and, where all issues between all parties may be laid to rest. Before the Pending Delaware Suit could be filed, however, it was obviously necessary that Galindez, PAG, Narragansett and AHG enter into some agreement as to the Delaware Suit and each's involvement therein – a process which was not finally completed until March 14, 2007 when the Agreement was executed. Less than two weeks later, on March 26, 2006 the Pending Delaware Suit was filed and approximately two weeks after that PAG's Motion to Dismiss was filed. Further, relatively little has yet taken place - PAG's interrogatory answers and document production responses were filed on April 13th and no depositions have yet been taken. In any event, the discovery that has been done will all be useful in the Pending Delaware Suit. It is obvious, therefore, that even if there was a delay in filing the Motion to Dismiss (which PAG does not concede) no harm has resulted therefrom.

Property Advisory Group, Inc.
By their Attorney,

/s/Max Wistow

Max Wistow (#0330)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
mw@wistbar.com

DATED: May 29, 2007